# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00136-CV

**William Duvall, Appellant**

v.

**Texas Department of Human Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. 98-08609, HONORABLE PAUL DAVIS, JUDGE PRESIDING

William Duvall sued the Texas Department of Human Services ("Department")
pursuant to the Whistleblower Act ("Act") and appeals a summary judgment the trial court granted
in favor of the Department. *See* Tex. Gov't Code Ann. §§ 554.001-.010 (West 1994 & Supp. 2002).
We will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Duvall joined the Department in 1988 as a systems analyst in the Management
Information Systems division ("MIS"). In 1994, Duvall received the first in a series of subpar
performance evaluations that ended with his termination in 1998.[1] During this period, he had varying
job assignments, working under several different supervisors within the Department. At the time his
whistleblower claim arose, Duvall was working as a cooperative performance standards compliance

---

[1] The evaluations primarily cite a lack of cooperation, failure to follow instructions, and poor
communication skills. Duvall does not dispute the accuracy of the evaluations.

analyst. In this position, Duvall's primary task was to compile data for the Customer Service Response Time Report, also referred to as the 95th Percentile Report.[2] The parties dispute the significance of the report. The Department claims the report was simply an internal measurement tool developed by MIS to identify trends and improve the response time of requests for information that go through the computer network. According to the Department, the reports provide MIS with an estimate of how long it takes for certain data retrieval transactions to occur, an example being a request for information concerning welfare benefits. Duvall claims that the report was not only for internal use, but was also sent to outside agencies.

In the spring of 1997, Duvall became concerned about what he believed were inaccuracies in the statistical methods used by one of the Department's divisions to compile the response time report. Duvall alleges that the division was "throwing out" response times that fell outside an expected, acceptable range. The Department contends that Duvall's real complaint is essentially that the response time figures were being reported to one decimal place instead of two, an insignificant difference given the internal nature of the report and its use as simply a general gauge of network performance. Duvall first noted his concerns with the response times to his supervisor David Larsen in the spring of 1997. In September 1997, Duvall was transferred to a new supervisor, Joyce English. Shortly after the transfer, Duvall received a written reprimand from English for violating departmental work rules.[3] On October 8, Duvall met with English to discuss his

---

[2] According to the department of human services, "95th percentile" refers to its goal of completing ninety-five percent of computer network data transactions within a certain time frame.

[3] The reprimand states that Duvall failed to follow English's instructions to stop sending weekly status reports to the director of telecommunications support services. It also reprimands him for an apparent breach of security in revealing to English the password for an application used to compile the service level agreements.

2

performance. At the meeting, Duvall conveyed his belief that the response times were not being accurately calculated. After English instructed him to stop pursuing the issue, Duvall accused her of trying to cover up "illegal activity" by the Department. In November, Duvall was placed on probation and, in January 1998, he was dismissed. He subsequently initiated grievance procedures, and in June 1998, an administrative law judge ruled in favor of the Department.

Duvall then filed his whistleblower action alleging that the Department had retaliated against him for reporting inaccuracies in the response times. The Department claims it fired Duvall based on his poor job performance. Duvall argues that the fact that the Department did not take corrective action against him earlier shows that the Department's demotion and subsequent firing of him were in retaliation for reporting a violation of law to English. In his first amended petition, Duvall identified section 37.10 of the Texas Penal Code, which creates a criminal offense for tampering with a governmental record, as the law he believes the Department violated.[4]

In response, the Department filed a plea to the jurisdiction that Duvall failed to timely invoke the Department's grievance procedures as required by the Act. Tex. Gov't Code Ann.

---

[4] Section 37.10 of the Texas Penal Code provides in relevant part:

    (a)  A person commits an offense if he:

        (1)  knowingly makes a false entry in, or false alteration of, a governmental record;

                                \* \* \*

        (3)  intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record;

                                  \* \* \*

Tex. Pen. Code Ann. § 37.10 (West 1994 & Supp. 2002).

§ 554.006. The district court denied the plea after a hearing in which Duvall judicially admitted that the only report of an alleged violation of law he would rely on was his October 8, 1997 report. The Department then moved for summary judgment on both traditional and no-evidence grounds that Duvall failed to prove the elements of a whistleblower claim. The court granted the Department's motion without specifying the grounds in its order.

On appeal, Duvall asserts that the trial court erred in granting summary judgment to the Department because (1) he made a good faith report; (2) he reported a violation of law; (3) he reported to an appropriate law enforcement authority; (4) he timely initiated grievance procedures in accordance with the Act; and (5) he prevailed on causation because the Department failed to rebut the statutory presumption that its actions were retaliatory.

**STANDARD OF REVIEW**

The Department moved for summary judgment on both traditional and no-evidence grounds. The standards for reviewing a traditional summary judgment motion are well established: (1) the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgement, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who moves for summary judgment must disprove at least one essential element of the plaintiff's causes of action. *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867 (Tex. App.—Austin 2001, pet. denied).

4

A party may also move for a "no-evidence" summary judgment. Tex. R. Civ. P. 166a(i). Such a motion asserts that there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. *Id.*; *McCombs v. Children's Med. Ctr.*, 1 S.W.3d 256, 258 (Tex. App.—Texarkana 1999, pet. denied). Unlike a movant for traditional summary judgment, a movant for a no-evidence summary judgment does not bear the burden of establishing a right to judgment by proving each claim or defense. *McCombs*, 1 S.W.3d at 258. A no-evidence summary judgment is properly granted if the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact as to an essential element of a claim on which the nonmovant would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Flameout Design v. Pennzoil Caspian*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist]. 1999, no pet.); *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70-71 (Tex. App.—Austin 1998, no pet.). Evidence is more than a scintilla when it "rises to the level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Fiesta Mart*, 979 S.W.2d at 71 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). As with a traditional summary judgment motion, we must construe the evidence in favor of the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 70. In the present case, we find the Department's no-evidence summary judgment motion dispositive of Duvall's whistleblower claim.

5

**DISCUSSION**

*Texas Whistleblower Act*

The purpose of the Texas Whistleblower Act is twofold: (1) to enhance open government by protecting public employees from retaliation by their employer when an employee reports a violation of the law in good faith; and (2) to secure lawful conduct by those who "direct and conduct the affairs of government." *See City of San Antonio v. Heim*, 932 S.W.2d 287, 290 (Tex App.—Austin 1996, writ denied). The Act is remedial in nature and must be liberally construed. *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573 (Tex. App.—Austin 1993, writ denied).

To prevail on his whistleblower claim, Duvall must allege that: (1) he is a public employee; (2) he acted in good faith in making a report; (3) the report involved a violation of law by the agency or a public employee; (4) the report was made to an appropriate law enforcement authority; and (5) he suffered retaliation for making the report. *See* Tex. Gov't Code Ann. § 554.002 (West 1994 & Supp. 2002);[5] *Heim*, 932 S.W.2d at 290.

---

[5] Section 554.002 provides:

    (a) A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

    (b) In this section, a report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to

6

*Appropriate Law Enforcement Authority*

In his fourth issue, Duvall argues that his report of a violation of law was made to an appropriate law enforcement authority, relying primarily on the October 8 report he made to his supervisor, English. We agree with the Department that Duvall has produced no evidence he reported to an appropriate law enforcement authority as currently defined by the Act.[6]

Duvall relies on pre-1995 case law for a broad definition of "appropriate law enforcement authority." *See Castaneda v. Texas Dep't of Agriculture*, 831 S.W.2d 501, 504 (Tex.App.—Corpus Christi 1992, writ denied) (defining "appropriate law enforcement authority" as "any entity with the capacity through legal processes or otherwise to take remedial action")*; Travis County v. Colunga*, 753 S.W.2d 716, 719-20 (Tex. App.—Austin 1988, writ denied) (defining "appropriate law enforcement authority" to include "at a minimum any public authority having the power and duty of inquiring into the lawfulness of the questioned activity and causing its cessation"); *see also City of Dallas v. Moreau*, 697 S.W.2d 472, 474 (Tex. App.—Dallas 1985, no writ).

---

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of the criminal law.

Tex. Gov't Code Ann. § 554.002 (West Supp. 2002).

[6] Both parties focus their arguments on the individual to whom the report was made (English), not the entity (the Department). In *Robertson County v. Wymola*, we held that the proper inquiry is whether the *entity* is an appropriate law enforcement authority. 17 S.W.3d 334, 340-41 (Tex. App.—Austin 2000, pet. denied). However, because we must indulge inferences in Duvall's favor on summary judgment, we will construe the evidence in terms of whether the Department was an appropriate law enforcement authority. *See infra*. p. 12.

7

When these cases were decided the Act did not define "appropriate law enforcement authority." However, in 1995 the Legislature amended section 554.002 of the Act by adding subsection (b) to narrow what constitutes an appropriate law enforcement authority. *See* Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 2, sec. 554.002, 1995 Tex. Gen. Laws 3812, 3812.[7] The current statute defines "appropriate law enforcement authority" as being part of a governmental entity that an "employee in *good faith* believes is authorized to regulate under or enforce the law alleged to be violated in the report or to investigate or prosecute a violation of the criminal law."[8] Tex. Gov't Code Ann. § 554.002(b) (emphasis added). Duvall's claim falls under the amended version of the Act.

Section 554.002(b) clearly delineates an appropriate law enforcement authority as a governmental entity that is authorized "to regulate under or enforce the law alleged to be violated or to investigate or prosecute a violation of criminal law." *Id*. However, subsection (b) requires only that an employee have a *good faith* belief that the entity reported to is an appropriate law enforcement authority, not that the report actually be made to such an entity. *Id*. Thus, correctly interpreting subsection (b) hinges on the meaning of "good faith." The Act does not define "good faith." Tex. Gov't Code Ann. §§ 554.001-010. "Good faith" is a distinctly legal term that has been construed

---

[7]  Before the 1995 amendments, section 554.002 read:

> A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority.

Tex. Gov't Code Ann. § 554.002 (West 1994).

[8]  The Act has not been amended since 1995. *See* Tex. Gov't Code Ann. §§ 554.001-.010 (West Supp. 2002).

8

differently by the courts. *See Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996). The Texas

Supreme Court has defined "good faith" in the context of the Act. See *Hart*, 917 S.W.2d at 784.

In *Hart*, the court construed "good faith" as it applies in subsection (a) of section 554.002 to contain

both a subjective and objective component:

> Good faith means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of employee's training and experience. The first part of the definition . . . ensures that employees seeking a remedy under the Whistleblower Act must have believed that they were reporting an actual violation of the law. The second part of the definition ensures that, even if the reporting employee honestly believed that the reported act was a violation of law, an employer that takes prohibited action against the employee violates the Whistleblower Act only if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law.

*Id*. The court observed that this definition strikes the appropriate balance between public and private

concerns in the whistleblower context, noting that while the Act protects public employees who

report illegal activity, public employers must also be able to "preserve their right to discipline

employees who make either intentionally false or objectively unreasonable reports." *Id*.

Where the Legislature has not defined a term, it is within the province of the courts

to construe its meaning. *Freels v. Walker*, 26 S.W.2d 627, 629 (Tex. 1930). Absent language

indicating a contrary intent, a word or phrase used in different parts of a statute is presumed to have

the same meaning throughout. *Dallas v. Watkins*, 651 S.W.2d 923, 925 (Tex. App.—Dallas 1983,

no writ) (holding that "disability" as used in different sections of the police and fire pension fund

statute should have the same definition); *L & M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920,

926 (Tex. Civ. App.—Tyler 1979, writ dism'd) (holding that "consumer goods" in venue statute

should be defined according to the definition of "consumer goods" in the business and commerce code). In construing a word or phrase, courts should consider the context of the separate sections in which the word or phrase appears. *See Paddock v. Siemoneit*, 218 S.W.2d 428, 435-36 (Tex. 1949) (holding that meaning of "wilfully" as used in separate subsections of federal tax code differed depending on whether statute imposed civil or criminal penalty).

With these principles in mind, we conclude that subsections (a) and (b) of section 554.002 warrant the same definition of "good faith." The presumption that a term used in different parts of a statute has the same meaning is even stronger where the term is used repeatedly in the same section. In section 554.002(b) the Legislature included the same "good faith" requirement for reports to an appropriate law enforcement authority as it requires in section 554.002(a) concerning an employee's good faith report of a violation of law. *See* Tex. Gov't Code Ann. § 554.002. Furthermore, we believe that the policy rationale articulated by the *Hart* court for its definition of "good faith" in construing subsection (a) applies with equal force to reports to an appropriate law enforcement authority in subsection (b) and is consistent with legislative intent. Both subsection (a) and (b) balance the right of employees to report illegal activity with that of employers to discipline employees who make "insincere or objectively unreasonable reports." Therefore, we hold that *Hart's* application of good faith to an employee's belief that the law has been violated should also apply to an employee's belief that he has reported to an appropriate law enforcement authority. In other words, for Duvall to prevail on this issue he must show that when he made his October 8 report to English he honestly believed he was reporting the perceived violation to an authority within an entity

10

which could regulate under or enforce the law in issue or investigate or prosecute a criminal offense and, moreover, that this belief was objectively reasonable.

We have found no state court opinion interpreting the 1995 amendment to section 554.002; however, we note that at least one federal court confronted with the amended version of section 554.002 has reached the same definition of good faith regarding a report to an appropriate law enforcement authority. *See Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 654-56 (S.D. Tex. 1998). In *Aldine*, a special education teacher, Mary Ann Carey, sued the school district for its nonrenewal of her employment contract, alleging violations of free speech, due process, breach of contract, and the Texas Whistleblower Act. In her whistleblower action, Carey alleged that the nonrenewal was in retaliation for her reporting of alleged violations of law by her principal and by the district. *Id.* Carey reported the violations to the district special education office and to several school officials. *Id.* at 655. The federal court granted the district's motion for summary judgment on Carey's whistleblower claims. *Id.* at 656. Applying the *Hart* court's definition of "good faith," the federal court found that Carey had presented no evidence that she had a good faith belief that any of the individuals or entities she reported to had the ability to "regulate under or enforce the law alleged to be violated in the report," thus Carey had not reported to an appropriate law enforcement authority.[9] *Id* at 655.

---

[9] The court stated:

> There is nothing within the statute or articulated by any Texas court to indicate that a different definition of "good faith" should apply to an employee's belief that the person to whom she was reporting alleged violations of law be authorized to: regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of the criminal law. . . . This court finds that

11

Turning now to Duvall's claim and construing the evidence in his favor as required in the summary judgment context, we initially point out that Duvall directed his proof only to English and not to the Department. *See Robertson County v. Wymola*, 17 S.W.3d 334, 340-41 (Tex. App.—Austin 2000, pet. denied) (holding that proper inquiry is whether entity, not individual, reported to is an appropriate law enforcement authority). However, even construing Duvall's summary judgment evidence concerning English in terms of whether the *Department* is an appropriate law enforcement authority, we find that the evidence fails to amount to the more than a scintilla necessary to withstand a no-evidence summary judgment motion. Duvall relies on the deposition testimony of English attached to the Department's motion for summary judgment in which she states that she was responsible for supervising Duvall on his assignment to reconfigure the data process for the response time reports. Based on this testimony, Duvall argues that English had the authority to take *remedial action* with regard to the alleged inaccuracies in the response time reports. However, this contention relies on the term "law enforcement authority" as it was broadly defined before the 1995 amendments. *See Casteneda*, 831 S.W.2d at 504. The current statute does not speak in terms of the authority to take remedial action, but instead the authority to regulate under or enforce the law alleged to be violated or to investigate or prosecute a violation of the criminal law. Tex. Gov't Code

---

Carey has presented no summary judgment evidence indicating that: (1) she had a subjective belief that the special education office and the principal and assistant principal had the power to regulate or enforce the state law and school district policies Carey alleges were violated; or (2) that such a belief would be reasonable, in the absence of her presentation of any evidence explaining these actors' roles in enforcing state or local law.

*Carey v. Aldine Indep. Sch. Dist.*, 996 F. Supp. 641, 655 (S.D. Tex. 1998).

Ann. § 554.002(b). In addition, Duvall fails to address or point to evidence that he had a good faith belief that English was an appropriate law enforcement authority. In the absence of other evidence, the fact that Duvall believed that English had the authority to take remedial action does not satisfy the objective or subjective component of good faith contained in section 554.002(b).

In his response, Duvall also contends that he reported a violation of law to the Department's acting director of telecommunications support services, Russell Seale. Duvall relies on a "speed memo" dated October 8 that he sent to a coworker briefly describing a meeting with Seale about the response time reports. The memo does not state whether Duvall told Seale that he believed the law was being violated. We note that the court's order denying the Department's plea to the jurisdiction states that Duvall judicially admits that the only report of a violation of law he would rely on at trial is his October 8 report. At the hearing on the plea, the only October 8 report discussed was the report to Joyce English. Even if the speed memo is sufficient to raise more than a scintilla of evidence that Duvall reported a violation of law to Seale, Duvall provides no evidence that Seale is an appropriate law enforcement authority.

As Duvall provided no evidence in his response to the Department's motion for summary judgment that he reported a violation of law to an appropriate law enforcement authority, we overrule this issue.

***Good Faith Report of Violation of Law***

Duvall also argues that the trial court erred by concluding that he did not make a good faith report of a violation of law. As discussed, the *Hart* court established a two-prong test containing a subjective and objective component for determining whether an employee's report of

a violation of law was made in good faith. *See Hart*, 917 S.W.2d at 785. To establish good faith, an employee must show that he believed that the reported conduct violated the law and that his belief was objectively reasonable in light of his training and experience. *Id*. Applying both traditional and no-evidence standards for summary judgment, the Department argues that Duvall failed to meet either the subjective or objective prong of the test. We conclude that Duvall fails to produce evidence that his report was objectively reasonable sufficient to withstand a no-evidence motion for summary judgment.[10]

The objective prong of Hart is met only if a "reasonably prudent employee in similar circumstances would have believed the facts as reported were a violation of law." *Id*. at 784-85; *see also Texas Dep't of Criminal Justice v. Terrell*, 18 S.W.3d 272, 276 (Tex. App.—Tyler 2000, pet. denied). As evidence that his belief was objectively reasonable, Duvall cites his "participation in the development of the programming inherent in the collection of the data, his educational background, and his years of employment in the MIS department." However, Duvall introduces no evidence in his response that shows how his training and experience led him to believe that a violation of law occurred. *See Terrell*, 18 S.W.3d at 276-277. In *Terrell*, a prison warden with the Texas Department of Criminal Justice claimed that his superior had violated the law by, among other things, falsifying the payroll. *Id*. at 274. The warden's allegations were based solely on rumors circulating within the department. The warden cited his twenty-one years of experience with the department as evidence that his belief that the law had been violated was objectively reasonable. *Id*. at 277. The

_____

[10] We assume without deciding that Duvall's statement to English that the department was covering up "illegal activity" is sufficient to meet the subjective prong of *Hart* for purposes of defeating summary judgment.

Tyler Court of Appeals concluded that (1) rumors were no evidence of violations of law, and that (2) in the absence of other evidence, the warden's training and experience were not sufficient by themselves to establish that his belief was objectively reasonable. *Id*. While rumors did not form the basis of Duvall's belief, the *Terrell* case is similar to the one at bar in that Duvall, like the warden in *Terrell*, has offered no evidence in his response other than his training and experience that his belief was objectively reasonable. Duvall correctly asserts that a law enforcement official, like Terrell, is held to a higher standard in determining whether his belief is objectively reasonable, *see Harris County Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex. 1996); however, it does not follow that those in non-law enforcement professions are held to *no* standard.

Finally, we observe that in Duvall's deposition attached to his response, he states that his previous supervisor, Larsen, shared his concerns about the calculation method and asked him "to look into it." Duvall did not claim that any law had been violated at that time, some months before he made the report to English at issue in this case. Nor does he mention the exchange with Larsen in his response. It was Duvall's burden under a no-evidence summary judgment to raise an issue of material fact. *See Flameout*, 994 S.W.2d at 834; Tex. R. Civ. P. 166(a)(i), comment ("To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; *its response need only point out evidence* that raises a fact issue on the challenged merits") (emphasis added). Regardless, the fact that Larsen may have shared Duvall's concerns about the calculation method proves nothing without evidence that Duvall or Larsen believed a law was being violated at that time. However, even if Larsen's statements could be construed as some evidence that Duvall's belief was objectively reasonable, we conclude it is so weak as to create no more than a "surmise or suspicion"

15

of a fact and is, therefore, no evidence. *See Kindred*, 650 S.W.2d at 63. We further conclude that in the absence of other evidence, Duvall's recitation of his experience is not sufficient to meet the objective prong of *Hart*. We overrule Duvall's second issue.

Because we have determined that Duvall failed to produce more than a scintilla of probative evidence on two elements of his whistleblower claim, it is unnecessary for us to consider his remaining issues.

## CONCLUSION

Duvall failed to produce sufficient evidence to withstand the Department's no-evidence motion for summary judgment; therefore, we affirm the trial court's judgment.

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: April 18, 2002

Publish

16