# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00245-CV

**Pamela Gulley, Appellant**

**v.**

**Texas Water Development Board, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. GN103267, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Pamela Gulley sued the Texas Water Development Board (the Board) alleging retaliatory discrimination in violation of the Whistleblower Act. *See* Tex. Gov't Code Ann. § 554.002 (West 2004). She asserted that she was discriminated against and constructively discharged in retaliation for identifying and correcting legal violations in accounting practices suggested by her superiors at the Board. The district court granted summary judgment in favor of the Board without making findings of fact and conclusions of law. Gulley appeals, contending that the Board itself was an appropriate law enforcement authority to report to under the Whistleblower Act and that she raised a genuine issue of material fact regarding every element of her claim. Because we conclude that the Board was not an appropriate law enforcement authority and that Gulley did not have a good faith belief that the Board was an appropriate law enforcement authority, we affirm the judgment of the trial court.

## BACKGROUND

The Board hired Gulley as director of its Accounting and Finance Division in March 2000. At the time, the Board's finances were in disarray, and Gulley's primary charge was to reorganize the division and produce an accurate Annual Financial Report (AFR). Gulley successfully reorganized her division, hired competent staff, and produced an accurate AFR by the end of November 2000.[1]

Gulley alleges that she suffered retaliation for three instances in which she identified accounting problems and reported them to her superiors. In January 2001, Gulley discovered that an employee had requested bereavement leave to attend the funeral of a great-grandmother. Gulley reported to her immediate supervisor, Paris Peden, that bereavement leave was unavailable for a great-grandparent's funeral but that emergency leave could be granted at the executive director's discretion. *See* Tex. Gov't Code Ann. § 661.902 (West 2004).

In April 2001, Gulley received a memo from executive director Craig Pederson regarding the allocation of sick leave for another employee. The employee had initially been denied extended sick leave and instead used all of her annual leave. At a later time, it was determined that the employee was entitled to extended sick leave. The memo stated that the employee's payroll records had been changed to reflect the decision that she was entitled to extended sick leave. Gulley reported to her supervisors that it was illegal to alter the payroll records and had them corrected. She then arranged for the annual leave to be credited back to the employee by other means.

---

[1] Once reorganized, the division was renamed the Fiscal Services Division.

Also in the spring of 2001, Pederson discovered a discrepancy in his state service records which had resulted in a small overpayment to him. A remedy was proposed in which Pederson would pay back the money by altering his service records so that the amount owed would be deducted from his pay over the course of several months. When Gulley learned of the plan, she objected and insisted that Pederson pay the money back directly. Pederson repaid the money in two installments of $86.35.

Gulley contends that her three objections to illegal or improper accounting practices suggested by her superiors led to retaliation and ultimately constructive discharge. She states that after she objected to the improper leave accounting in January 2001, she was subjected to numerous counseling sessions, harassment, and discrimination. In May, her supervisor signed a Performance Plan and Appraisal evaluating Gulley's work from March 22, 2000, through February 13, 2001, rating Gulley's job performance as meeting or exceeding job requirements in all categories except leadership and professional conduct. In early June, Gulley submitted a rebuttal to the evaluation. She also inquired with Human Resources about filing a grievance. On June 14, 2001, Peden sent a written memorandum to Gulley stating that she had responded to a customer question inappropriately and that she had improperly spent work time reviewing documents for personal reasons. Peden concluded the memorandum by stating:

> Pam, we have discussed similar issues numerous times in the past regarding your conduct, yet I continue to observe inappropriate behavior in the workplace. If this continues, I have no choice but to take progressive disciplinary action. Please reflect on this feedback, Pam, and let me know if you would like to discuss it further.

3

Gulley announced her resignation the next day. When she resigned, ten employees in Gulley's division nominated her for an individual award stating:

> During her tenure with the Board Pam has always gone out of her way to ensure that the work is accurate and complete and that Fiscal Services takes the appropriate steps to become a more efficient division to work in. Pam's contribution to turning this division around is irreplaceable.

Peden did not approve the nomination.

## DISCUSSION

Gulley contends in her first issue that she made a good faith report of the accounting violations to an appropriate law enforcement authority as required by the Whistleblower Act. *See* Tex. Gov't Code Ann. § 554.002(b). Whether an employee reported a violation of law to an appropriate law enforcement authority is a question of law that we review *de novo*. *City of Fort Worth v. DeOreo*, 114 S.W.3d 664, 668 (Tex. App.—Fort Worth 2003, no pet.). Our consideration of this issue is guided by recent constructions of the statute by the supreme court and our Court. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314 (Tex. 2002); *Duvall v. Texas Dep't of Human Services*, 82 S.W.3d 474 (Tex. App.—Austin 2002, no pet.).

In *Needham* and *Duvall*, both courts emphasized that the Whistleblower Act was amended in 1995 to define an "appropriate law enforcement authority." *See Needham*, 82 S.W.3d at 319; *Duvall*, 82 S.W.3d at 479. The statute states:

> A report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity . . . that the employee in good faith believes is authorized to:

4

(1) regulate under or enforce the law alleged to be violated in the report; or

(2) investigate or prosecute a violation of criminal law.

Tex. Gov't Code Ann. § 554.002(b). This definition narrowed earlier judicial interpretations of the term. *See Duvall*, 82 S.W.3d at 479 (citing *Castaneda v. Texas Dep't of Agriculture*, 831 S.W.2d 501, 504 (Tex. App.—Corpus Christi 1992, writ denied) (appropriate law enforcement authority is any entity with capacity to take remedial action), and *Travis County v. Colunga*, 753 S.W.2d 716, 719-20 (Tex. App.—Austin 1988, writ denied) (appropriate law enforcement authority has power to inquire into lawfulness of activity and cause its cessation)).

In *Needham*, the supreme court also explained that an employee has a good faith belief that a report is made to an appropriate law enforcement authority if:

(1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated, or (b) investigate or prosecute a violation of criminal law; and

(2) the employee's belief was reasonable in light of the employee's training and experience.

*Needham*, 82 S.W.3d at 321; *see also Duvall*, 82 S.W.3d at 480-81.

In this case, we must determine whether Gulley's report of accounting violations to her superiors at the Board constitutes a good faith report to an appropriate law enforcement authority. *See* Tex. Gov't Code Ann. § 554.002(b). Gulley contends that because the Board is required by law to properly expend the funds allocated to it by the legislature and properly administer employee

5

leave, it is authorized to regulate or enforce the laws allegedly violated. *See id*. § 554.002(b)(1). We find this contention to be foreclosed by our decision in *Duvall*.

Duvall sued his employer, the Texas Department of Human Services, under the Whistleblower Act alleging that he suffered retaliation for reporting what he believed was an inaccuracy in the statistical methods used to compile reports measuring response time for data retrieval. *Duvall*, 82 S.W.3d at 476. After he reported the improper calculation to at least two supervisors, he was instructed not to pursue the matter. Duvall accused his supervisor of trying to cover up illegal activity. *Id*. Duvall was subsequently placed on probation and later dismissed. *Id*.

The issue presented was whether Duvall's report of the improper calculation to his supervisor constituted a good faith report to an appropriate law enforcement authority:

> Duvall argues that [his supervisor] had the authority to take *remedial action* with regard to the inaccuracies in the response time reports. However, this contention relies on the term "law enforcement authority" as it was broadly defined before the 1995 amendments . . . . The current statute does not speak in terms of the authority to take remedial action, but instead the authority to regulate under or enforce the law alleged to be violated or to investigate or prosecute a violation of the criminal law.

*Id*. at 481. Noting that Duvall presented no evidence of his good faith belief that his supervisor was an appropriate law enforcement authority other than the supervisor's authority to take remedial action, we held that Duvall's claim did not make a good faith report to an appropriate law enforcement authority. *Id*.

Similarly, Gulley contends that she had a good faith belief that her supervisors at the Board were appropriate law enforcement authorities because they were obliged to comply with the law and that they had the authority to enforce the law by preventing employees from violating it.

6

The Board's authority to prevent employees from violating leave policy or altering payroll records is similar to the remedial power to correct inaccurate calculations in *Duvall*, a power that we held did not amount to the authority to regulate or enforce the law under the narrowed statutory definition added in 1995. Our reading of the statute was validated by the supreme court's holding in *Needham*:

> But construing the statutory terms to include a public employer's internal disciplinary power would mean all public employers with a disciplinary policy for handling employees' alleged illegal conduct are "appropriate law enforcement authorities" for purposes of reporting any alleged violation. We reject such an interpretation.

82 S.W.3d at 320. Here, Gulley does not contend that she believed the Board's authority to enforce the law extended beyond its ability to prevent its employees from breaking the law or correcting violations. Thus, she did not make a good faith report of a violation to an appropriate law enforcement authority. *See Needham*, 82 S.W.3d at 321; *Duvall*, 82 S.W.3d at 481-82.

We hold that Gulley was not entitled to protection under the Whistleblower Act because she did not make a good faith report of a violation of law to an appropriate law enforcement authority. Thus, we need not reach her remaining issues. *See* Tex. R. App. P. 47.1 (court must address issues necessary to final disposition of appeal). We affirm the judgment of the trial court.

---

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: November 18, 2004