NUMBER 13-08-00209-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MATEO GARCIA, III, Appellant,


v.



NUECES COUNTY EMPLOYEES

CREDIT UNION, Appellee.

 



On appeal from the 214th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Garza, and Vela


Memorandum Opinion by Justice Garza


 

 This case involves numerous causes of action pertaining to the collection of
consumer debt owed on various vehicles by appellant, Mateo Garcia III. Garcia appeals
the trial court's order granting a no-evidence motion for summary judgment filed by
appellee, Nueces County Employees Credit Union ("NCECU"). By one issue, Garcia
contends that he raised a genuine issue of material fact, thereby precluding summary
judgment, as to his claims for: (1) malicious prosecution; (2) violations of the Texas Debt
Collection Act ("TDCA"), see Tex. Fin. Code Ann. § 392.301(a) (Vernon 2006); and (3)
unreasonable debt collection. We affirm.

I. Factual and Procedural Background


 The underlying dispute arose out of the actions of NCECU in collecting consumer
debt on various automobile loans obtained by Garcia. NCECU began extending credit to
and executing loan agreements with Garcia in the spring of 1999. In particular, one of the
loans obtained was for a 1995 Pontiac Firebird. The loan agreement for the Firebird was
executed on December 1, 1999; Garcia made his first payment via payroll deduction on
February 4, 2000. The loan agreement provided that Garcia's minimum monthly payment
was to be at least $146.00 and that the total monthly payment on all of his loans was
$474.00. (1)

 On or about February 9, 2001, and prior to his last payment made by payroll
deduction, Garcia sold the Firebird to Josephine Luna without receiving permission from
NCECU. Luna agreed to pay Garcia $370.00 per month for the vehicle. Luna continually
made payments to Garcia until the Firebird was repossessed by NCECU on January 28,
2002. NCECU alleged that Garcia made his last payment on the loan for the Firebird on
October 12, 2001, even though $7,175.12 was still owed on the vehicle. NCECU notified
Garcia of the delinquency and demanded that he bring current the payments on the
Firebird. Garcia ignored NCECU's notices, and NCECU, in turn, repossessed the vehicle. 

 Displeased with the repossession of the Firebird, Luna, on February 5, 2002,
notified Garcia that she intended to pursue a claim against him for numerous violations of
the Texas Deceptive Trade Practices Act. On April 9, 2002, Luna executed a "WITNESS
STATEMENT" noting the circumstances surrounding her purchase of the Firebird and
stating that she would not have purchased the Firebird had she been made aware that
NCECU had a first priority lien on the vehicle.

 As a result of his dealings with Luna, Garcia was indicted for one count of hindering
secured creditors, see Tex. Penal Code Ann. § 32.33 (Vernon 2003), and one count of
felony theft, see id. § 31.03 (Vernon Supp. 2008). (2) The State dismissed the indictment
against Garcia on May 3, 2004, because it was "unable to locate key witnesses."

 On August 26, 2005, Garcia filed his original petition asserting claims against
NCECU for wrongful debt collection, unreasonable debt collection, malicious prosecution,
extortion, intentional infliction of emotional distress, wrongful repossession, libel, slander,
negligence, assault, wrongful arrest, and for violations of the finance code and the
deceptive trade practices act. However, after granting Garcia an extension on March 29,
2006, the trial court dismissed Garcia's case for want of prosecution on May 2, 2006.

 On November 15, 2006, Garcia re-filed his petition against NCECU, asserting the
same claims made in the August 26, 2005 petition. On December 18, 2006, the trial court
sustained NCECU's special exceptions to Garcia's November 15, 2006 petition. In its
special exceptions, NCECU alleged that Garcia failed to supply sufficient facts to support
the claims contained in his petition. 

 In response to the trial court's ruling on NCECU's special exceptions, Garcia filed
a "Supplemental Petition" on December 29, 2006. Garcia apparently intended for the
"Supplemental Petition" to be an amended petition. (3) In this filing, Garcia asserted claims
for: (1) violations of the TDCA under section 392.301 of the finance code, see Tex. Fin.
Code Ann. § 392.201(a); (2) unreasonable debt collection; (3) malicious prosecution; and
(4) intentional infliction of emotional distress. (4)

 On February 26, 2007, NCECU filed a traditional motion for summary judgment,
asserting that Garcia's claims were time-barred. Garcia filed a response to NCECU's
motion for summary judgment, contending that he was of unsound mind as a result of
NCECU's actions, thus necessitating the tolling of the limitations period. (5) On March 28,
2007, the trial court denied NCECU's traditional motion for summary judgment.

 Subsequently, NCECU filed a no-evidence motion for summary judgment, noting
that an adequate time for discovery had passed and that Garcia had failed to provide
competent summary judgment evidence as to the elements of the claims asserted in his
December 29, 2006 petition. On November 13, 2007, Garcia filed a response to NCECU's
no-evidence motion for summary judgment and attached various exhibits, including several
loan agreements he had with NCECU, and affidavits that he executed.

 NCECU filed both objections to and a motion to strike Garcia's summary judgment
evidence, asserting that: (1) the affidavits Garcia relied upon were conclusory and that he
attempted to offer expert testimony when he was not an expert; (2) there was no evidence
supporting the statements made in the affidavits; (3) the affidavits were not the best
evidence of the alleged causes of action; and (4) the affidavits contained improper legal
conclusions. (6) The record does not contain a ruling on NCECU's objections to and motion
to strike Garcia's summary judgment evidence. 

 The trial court heard arguments on NCECU's no-evidence motion for summary
judgment on January 24, 2008. On that same day, the trial court granted NCECU's no-evidence motion for summary judgment as to all of Garcia's claims. On February 21, 2008,
Garcia filed a motion for new trial and a motion for sanctions. Garcia alleged that counsel
for NCECU repeatedly lied to the trial court, filed frivolous pleadings, and made frivolous
arguments. On March 19, 2008, the trial court conducted a hearing on Garcia's motion for
new trial and motion for sanctions; on the same day, the trial court denied Garcia's motion
for new trial and his motion for sanctions. This appeal ensued. 

II. Standard of Review


 A party may move for summary judgment under rule 166a(i) on the ground that
there is no evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); W. Invs., Inc.
v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); Duvall v. Tex. Dep't of Human Servs., 82
S.W.3d 474, 477 (Tex. App.-Austin 2002, no pet.). Unless the non-movant produces
summary judgment evidence raising a genuine issue of material fact on the challenged
elements, the court must grant the motion. Tex. R. Civ. P. 166a(i); Urena, 162 S.W.3d at
548; Duvall, 82 S.W.3d at 477-78.

 In reviewing a no-evidence claim, we view the evidence in a light that tends to
support the finding of the disputed fact and disregard all evidence and inferences to the
contrary. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581-82 (Tex. 2006); City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). If more than a scintilla of evidence exists, it
is legally sufficient. Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex.
2002). Evidence is more than a scintilla when it rises to the level that would enable
reasonable and fair-minded people to differ in their conclusions. Duvall, 82 S.W.3d at 478. 
But when evidence offered to prove a vital fact is so weak as to do no more than create a
mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect,
is no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004); Duvall, 82
S.W.3d at 478. A no-evidence summary judgment is improperly granted if the non-movant
presents more than a scintilla of probative evidence to raise a genuine issue of material
fact. Lampasas v. Spring Ctr., Inc., 988 S.W.2d 428, 432 (Tex. App.-Houston [14th Dist.]
1999, no pet.).

III. Analysis


 In his sole issue on appeal, Garcia contends that he produced sufficient evidence
to raise a genuine issue of material fact as to each element of his claims for violations of
the TDCA, unreasonable debt collection, and malicious prosecution. (7) NCECU counters
by arguing that Garcia failed to raise an genuine fact issue regarding his claims and that
he failed to proffer competent summary judgment evidence. (8)


A. Malicious Prosecution


 Garcia argues that NCECU sought out the Nueces County District Attorney's Office
to harass him into making a payment of $13,500 (9)--which he disputes was not owed--on
his consumer debt by threatening criminal prosecution. Conversely, NCECU asserts that
Garcia violated sections 31.03 and 32.33 of the penal code when he sold the Firebird to
Luna; therefore, the indictment against Garcia was not used for the purpose of harassing
or threatening Garcia into making a payment on his consumer debt. See Tex. Penal Code
Ann. §§ 31.03, 32.33.


 1. Applicable Law


 There are seven elements of a malicious prosecution claim in Texas: (1) the
commencement of a criminal prosecution against the plaintiff; (2) the initiation or
procurement of the prosecution by the defendant; (3) termination of the prosecution in the
plaintiff's favor; (4) the plaintiff's innocence; (5) the lack of probable cause for the
proceedings; (6) malice in filing the charge; (10) and (7) damage suffered by the plaintiff. See
Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997); see also Coniglio v.
Snyder, 756 S.W.2d 743, 744 (Tex. App.-Corpus Christi 1988, writ denied). 

 2. Discussion


 In an affidavit filed in response to NCECU's no-evidence motion for summary
judgment, Garcia noted the following:


 Olga P[o]mpa [a manager at NCECU] threatened to accuse me of a
crime if I did not pay amounts not owed. The Credit Union's own records
show the amounts were not owed. She demanded $13,500 or else I would
be prosecuted (Craig Hill did also on her behalf). I told her I didn't owe so
much. She said I had to pay the entire amount or else be prosecuted for a
crime. . . . The Credit Union's own documentation shows I owed at most a
few hundred dollars at the time I resigned my job but she insisted that I pay
$13,500--a number with no basis in any fact to my knowledge.

 

 . . . .

 

 The Credit Union is identified as the "victim" on the Offense Report. 
The Offense Reports [sic] states that the Credit Union brought this case to
the District Attorney. A note exists from Ogla [sic] P[o]mpa to Craig Hill. 
Several "To Whom It May Concern Letters" also exist. One of these letters
has the business card of a police officer attached. The Offense Report
states that the Credit Union provided documents to the District Attorney and
obviously statements are made in the Offense Report that could have
originated nowhere other than from the Credit Union (e.g. payment history).


In addition, Garcia attached to his response, among other things, a copy of the loan
agreement for the Firebird. The loan agreement provided:


 SECURITY INTEREST: In return for receiving the benefits of your
open-end loan advance or other consideration, and by signing on the
previous page or by endorsing a check you receive for your loan, you grant
the Credit Union a security interest in the property described as collateral on
the previous page. This security interest covers not only that property but all
proceeds, substitutions, or replacements, accessions, improvements, all
proceeds from insurance, and all refunds of unearned premiums. . . .

 

 OWNERSHIP OF COLLATERAL: You promise that you will use the
proceeds of the open-end loan advance to buy the collateral or that you own
the collateral. You promise that no one else has any interest in or claim
against the collateral other than those you have already disclosed to the
credit union. You agree not to sell, lease, or give it as collateral to anyone
else until you have repaid what you own the Credit Union or the Credit Union
gives its written permission.


 Garcia also attached a copy of the offense report compiled by the Nueces County
District Attorney's Office. The report stated that Garcia improperly sold the Firebird to
Luna, and that at the time the Firebird was repossessed, Garcia owed a balance of
$7,175.12 plus a $250.00 charge for the repossession. The report further stated that: (1)
Garcia failed to give the proceeds of the sale of the Firebird to NCECU; (2) that Garcia
failed to return the vehicle to NCECU; (3) Luna lost her money and vehicle as a result of
Garcia's actions and NCECU's repossession of the Firebird; and (4) this information was
obtained from NCECU. As a result of Garcia's actions, the Nueces County District
Attorney's Office filed charges for hindering a secured creditor (in violation of section 32.33
of the penal code) and felony theft (11) (in violation of section 31.03 of the penal code). See
Tex. Penal Code Ann. §§ 31.03, 32.33.

 Garcia also provided a copy of a statement he received from NCECU chronicling
his payment history from January 1, 2002 to April 30, 2002. At this time, Garcia owed a
balance of $7,175.12 on the Firebird. The statement did not include the repossession fee,
and it addressed Garcia's other loans with NCECU which are not the focus of this issue. (12)

 Garcia's summary judgment evidence appears to establish several of the elements
required to advance a claim for malicious prosecution. It is clear from the record that: (1)
criminal charges were brought against Garcia; (2) NCECU provided information to the
Nueces County District Attorney's Office which resulted in the commencement of the
prosecution against Garcia; and (3) the charges were dismissed in Garcia's favor. See
Richey, 952 S.W.2d at 517. However, Garcia failed to offer evidence raising an issue of
material fact as to the lack of probable cause for the proceedings or malice. See id.

 Section 32.33 of the penal code provides, in relevant part, that: "A person who has
signed a security agreement creating a security interest in property or a mortgage or deed
of trust creating a lien on property commits an offense if, with intent to hinder enforcement
of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or
reduces the value of the property." Tex. Penal Code Ann. § 32.33(b). Section 32.33
further provides that:

 A person who is a debtor under a security agreement, and who does not
have a right to sell or dispose of the secured property or is required to
account to the secured party for the proceeds of a permitted sale or
disposition, commits an offense if the person sells or otherwise disposes of
the secured property, or does not account to the secured party for the
proceeds of a sale or other disposition as required, with intent to appropriate
(as defined in Chapter 31) the proceeds or value of the secured property. A
person is presumed to have intended to appropriate proceeds if the person
does not deliver the proceeds to the secured party or account to the secured
party for the proceeds before the 11th day after the day that the secured
party makes a lawful demand for the proceeds or account. . . .


Id. § 32.33(e) (emphasis added). 

 Garcia sold the Firebird to Luna even though the loan agreement prohibited him
from doing so; Garcia never accounted to NCECU for the proceeds from the sale of the
Firebird. Therefore, Garcia's sale of the Firebird appears support a charge for a violation
of section 32.33(e) of the penal code. See id. Furthermore, the charges against Garcia
were dropped because the State had difficulty in locating witnesses. Garcia was not
acquitted of the charges; in fact, no findings were made with regard to Garcia's guilt or
innocence. However, the record supports a finding that the charges against Garcia were
neither false nor frivolous. Moreover, Garcia's summary judgment evidence does not raise
a material fact question as to whether NCECU possessed an "ill will, evil motive, gross
indifference, or reckless disregard of the rights of others" in contacting the Nueces County
District Attorney's Office about Garcia's alleged criminal violations. See Thrift v. Hubbard,
974 S.W.2d 70, 80 (Tex. App.-San Antonio 1998, pet. denied). Accordingly, we conclude
that Garcia failed to raise a genuine issue of material fact as to several elements of his
malicious prosecution claim; therefore, NCECU was entitled to judgment as a matter of
law. See Tex. R. Civ. P. 166a(i); Urena, 162 S.W.3d at 548; Duvall, 82 S.W.3d at 477.

B. Violations of the TDCA


 With respect to his TDCA claim, Garcia contends that NCECU threatened him with
criminal charges in order to collect on consumer debt he owed, which violated the TDCA. 
See Tex. Fin. Code Ann. § 392.301(a). Garcia further contends that the criminal charges
brought against him were false and brought for the sole purpose of extortion. As a result
of NCECU actions, Garcia argues that he suffered extreme mental anguish and financial
loss. NCECU asserts that Garcia failed to produce competent summary judgment
evidence establishing that he was falsely accused of a crime or was threatened with false
accusations of a crime in an attempt to collect on consumer debt he owed.

 1. Applicable Law


 The TDCA provides remedies for wrongful debt collection practices arising out of
a debtor-creditor relationship. See Ford v. City State Bank of Palacios, 44 S.W.3d 121,
135 (Tex. App.-Corpus Christi 2001, no pet.); see also Peters v. Quinney, No. 03-01-00043-CV, 2001 Tex. App. LEXIS 8395, at *11 (Tex. App.-Austin Dec. 20, 2001, no pet.)
(mem. op.). Section 392.301 of the finance code provides, in relevant part, that:


 (a) In debt collection, a debt collector[ (13)] may not use threats, coercion, or
attempts to coerce that employ any of the following practices:

 

 . . . .

 

 (2) accusing falsely or threatening to accuse falsely a person of fraud
or any other crime;


 (3) representing or threatening to represent to any person other than
the consumer that a consumer is wilfully refusing to pay a
nondisputed consumer debt when the debt is in dispute and the
consumer has notified in writing the debt collector of the dispute;

 

 . . . .

 

 (5) threatening that the debtor will be arrested for nonpayment of a
consumer debt without proper court proceedings;

 

 (6) threatening to file a charge, complaint, or criminal action against
a debtor when the debtor has not violated a criminal law;


 . . . .


 (8) threatening to take an action prohibited by law.


Tex. Fin. Code Ann. § 392.301(a). Subsection (b) provides that a debt collector is not
prevented from:

 (1) informing a debtor that the debtor may be arrested after proper
court proceedings if the debtor has violated a criminal law of this
state;

 

 (2) threatening to institute civil lawsuits or other judicial proceedings
to collect a consumer debt; or

 

 (3) exercising or threatening to exercise a statutory or contractual right
of seizure, repossession, or sale that does not require court
proceedings. 


Id. § 392.301(b).


 2. Discussion

 

 Garcia asserts that he was a consumer, noting that the loan obtained from NCECU
was "primarily for personal, family, or household use." Garcia further asserts that NCECU
violated the TDCA when it allegedly threatened him with criminal charges if he did not pay
off his debts.

 The TDCA defines a "consumer" as "an individual who has a consumer debt." Id.
§ 392.001(1) (Vernon 2006). Consumer debt is "an obligation, or an alleged obligation,
primarily for personal, family, or household purposes and arising from a transaction or
alleged transaction." Id. § 392.001(2). Garcia directs us to the loan agreements which he
executed with NCECU. The "ADDITIONAL PROVISIONS" section of the loan agreements
provided that: "It is your intention to use this open-end credit plan primarily for personal,
family, or household use." Garcia also relies on his own affidavit testimony, whereby he
stated that the loan from NCECU was for his own benefit and that the vehicles purchased
with the loan were for his "personal purposes." The record supports Garcia's contention
that he was a consumer and that the collateral covered by the loan agreement was for
personal use under the TDCA. See id. § 391.001(1)-(2).

 In support of his contention that NCECU violated the TDCA, Garcia points to his
affidavits and the offense report generated by the Nueces County District Attorney's Office. 
Garcia alleges that this summary judgment evidence demonstrated that NCECU "brought
the case to the District Attorney's Office" and that NCECU repeatedly threatened him with
criminal charges if he did not pay off the remaining balances on the loan agreements he
had with NCECU. Specifically, Garcia, in one of his affidavits, noted that "[t]here was no
crime. Mateo paid for these loans with payroll deduction. . . . He was substantially current. 
Further, Appellee was responsible for and had control of Mateo's payroll deductions. 
Appellee never complained about any small delinquency until it started persecuting Mateo." 
(Record citations omitted.) Garcia further noted that: (1) several people tried to make
payments on the loans on his behalf, but NCECU refused to accept the payments; and (2)
the alleged $13,500 owed was not supported by any of NCECU's records. 

 Despite his contentions, Garcia's summary judgment evidence does not raise a
question of material fact as to whether NCECU violated the TDCA. Garcia has not pointed
to any evidence in the record demonstrating that: (1) NCECU threatened him with a false
criminal complaint or that NCECU caused him to be falsely accused of a crime; (2) NCECU
threatened Garcia with arrest for nonpayment of his debts without proper court
proceedings; or (3) NCECU took an action prohibited by law. (14) See Tex. R. App. P. 38.1(h). 
We conclude that Garcia has failed to bring forth more than a scintilla of probative
evidence raising a genuine issue of material fact as to his claim that NCECU violated the
TDCA; therefore, NCECU was entitled to judgment as a matter of law on Garcia's TDCA
claims. See Tex. R. Civ. P. 166a(i); Urena, 162 S.W.3d at 548; Duvall, 82 S.W.3d at
477-78. 

C. Unreasonable Debt Collection 


 With respect to his claim for unreasonable debt collection, Garcia argues, in one
paragraph, that "threatening a law enforcement officer with prosecution for a nonexistent
crime and attempting to groundlessly extort money from him when he owes no money is
an unreasonable way to collect a debt" and that "a jury could infer that the described
conduct was willful, wanton, malicious, and for purposes of harassment." NCECU asserts
that Garcia did not produce competent summary judgment evidence creating a fact issue
on this claim. 

 1. Applicable Law 


 Unreasonable debt collection is an intentional tort. EMC Mortgage Corp. v. Jones,
252 S.W.3d 857, 868 (Tex. App.-Dallas 2008, no pet.). The elements are not clearly
defined and the conduct deemed to constitute an unreasonable (15) debt collection effort
varies from case to case. Id. "The method of submission of the issue to a jury is as varied
as the conduct giving rise to the tort." (16) Id. Essentially, conduct giving rise to the tort
includes "efforts that amount to a course of harassment that was willful, wanton, malicious,
and intended to inflict mental anguish and bodily harm." See Montgomery Ward & Co. v.
Brewer, 416 S.W.2d 837, 844 (Tex. Civ. App.-Waco 1967, writ ref'd n.r.e.); Connell v.
Rosales, 419 S.W.2d 673, 676 (Tex. Civ. App.-Texarkana 1967, no writ). 

 2. Discussion


 In asserting that NCECU engaged in unreasonable debt collection, Garcia appears
to rely heavily on his arguments pertaining to the issue of TDCA violations. Garcia has not
cited any evidence demonstrating that NCECU's conduct was willful, wanton, or malicious
in attempting to collect on his debt. See Tex. R. App. P. 38.1(h). Garcia's bald allegations
that NCECU engaged in unreasonable debt collection does not create more than a scintilla
of probative evidence raising a genuine issue of material fact. See Ford Motor Co., 135
S.W.3d at 600 (holding that less than a scintilla of evidence exists when the evidence is
so weak as to do no more than create a mere surmise or suspicion of a fact). Furthermore,
we have already rejected Garcia's assertions that he raised a material fact issue as to
NCECU's alleged TDCA violations. We therefore conclude that NCECU was entitled to
judgment as a matter of law on Garcia's unreasonable debt collection claims.


IV. Conclusion


 Having concluded that Garcia failed to raise a genuine issue of material fact as to
the essential elements his claims for malicious prosecution, violations of the TDCA, and
unreasonable debt collection, we overrule his sole issue on appeal. Accordingly, we affirm
the judgment of the trial court.

 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 20th day of November, 2008.


1. In addition to the Firebird, the record reflects that Garcia also took out loans from NCECU for a 1998
Ford Crown Victoria, a 1989 Nissan Maxima, and a pickup.
2. On appeal, Garcia alleges that he "violated no known law," and that he resigned from his job as a
bailiff because he was humiliated by the charges brought against him and he desired to prevent
"embarrassment to his judge." Garcia further alleges that he was threatened with prosecution if he did not
pay $13,500 to NCECU for the remaining balance on the Firebird. Garcia executed an affidavit stating that
the $13,500 allegedly owed had "no basis in any fact to [his] knowledge."
3. With respect to his "Supplemental Petition," Garcia noted the following:


 Mateo Garcia respectfully files this Supplemental Petition. Opposing Counsel pointed out
that his previous petition had the wrong cause number and suggested that it was misnamed. 
It was agreed that the cause number was incorrect and the name could be changed. 
However, there was no intention to eliminate assertion of the doctrine of tolling due to
unsound mind. . . . Plaintiff asserts the doctrine of tolling due to unsound mind.


In addition, the record contains a rule 11 agreement between the parties indicating that Garcia's
"Supplemental Petition" was misnamed and that it was intended to be an amended petition. See Tex. R. Civ.
P. 11.
4. Because the trial court sustained NCECU's special exceptions to Garcia's November 15, 2006
petition and because Garcia did not re-assert many of the claims contained in his November 15, 2006 petition,
we conclude that those claims not included in Garcia's December 29, 2006 "Supplemental Petition" were
abandoned.
5. Attached to Garcia's response to NCECU's motion for summary judgment were affidavits executed
by himself and psychologist Barbara Beckham M.D., detailing his unsound mental state.
6. NCECU's objections to and motion to strike Garcia's summary judgment evidence was directed at
both Garcia's November 13, 2007 affidavit and his affidavit executed in response to NCECU's traditional
motion for summary judgment.
7. On appeal, Garcia does not address the intentional infliction of emotional distress claim that he
raised in the trial court. See Tex. R. App. P. 38.1(e).
8. NCECU urges this Court to strike Garcia's appellate brief because Garcia failed to include
appropriate citations to authority to support his contentions. See Tex. R. App. P. 38.1(h). Though Garcia's
appellate brief could have been better drafted, he has included citations to the record and appropriate authority
for the majority of his contentions. Accordingly, we DENY NCECU's motion to strike.
9. The record does not appear to support Garcia's allegation that he was ordered to pay $13,500. 
Garcia has not directed us to any evidence supporting his affidavit testimony that NCECU directed him to pay
$13,500.
10. "Malice is generally defined as ill will, evil motive, gross indifference, or reckless disregard of the
rights of others." Thrift v. Hubbard, 974 S.W.2d 70, 80 (Tex. App.-San Antonio 1998, pet. denied). Malice
may be established by either direct or circumstantial evidence and may be inferred from lack of probable
cause. Id. 
11. Section 31.03 of the Texas Penal Code states, in relevant part, that: "A person commits an offense
[of theft] if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code
Ann. § 31.03(a) (Vernon Supp. 2008). However, in addressing Garcia's malicious prosecution claim, we need
only address the applicability of section 32.33 of the penal code. See Tex. R. App. P. 47.1.
12. NCECU statement provided that Garcia had an outstanding balance of $1,748.51 on the Maxima
and a balance of $4,680.52 on the Crown Victoria. The pickup did not have an outstanding balance. The
statement further provided that the Maxima was sold for $1,400.00, and the Crown Victoria was sold for
$5,000.00.
13. Section 392.001 of the finance code provides that a "debt collector" is a "person who directly or
indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be
a collection system, device, or scheme intended to be used to collect consumer debts." Tex. Fin. Code Ann.
§ 392.001(6) (Vernon 2006). Neither party disputes NCECU's characterization as a debt collector.
14. In arguing that section 392.301(a)(3) applies to this matter, Garcia states the following:


 Number 2(b). The statute prohibits representing that a debtor is refusing to pay an
undisputed debt when he is not. . . . Mateo was paying as evidenced by the Credit Union's
own documents. Appellee even refused payments that were tendered. Further, Appellee
actually owed Mateo not vice versa . . . . Nevertheless, the Credit Union represented that
Mateo was not paying on the debt for over a year--there is no specific objection to the
hearsay nature of this statement so this objection is waived.


(Emphasis in original.) At no point on appeal has Garcia cited evidence in the record that NCECU
represented to another person that he refused to pay his disputed consumer debt after he had notified NCECU
that he was disputing the debt. See id. § 392.301(a)(3) (Vernon 2006); see also Tex. R. App. P. 38.1(h). As
such, we consider this sub-issue to be inadequately briefed. See Tex. R. App. P. 38.1(h).
15. "The common, everyday meaning of 'unreasonable' is 'exceeding the bounds of reason or
moderation.'" EMC Mortgage v. Jones, 252 S.W.3d 857, 869 (Tex. App.-Dallas 2008, no pet.) (quoting
Webster's Int'l Dictionary 2507 (3rd ed. 1981)).
16. Compare Household Credit Servs., Inc. v. Driscol, 989 S.W.2d 72, 81 n.3 (Tex. App.-El Paso 1988,
writ denied) (submission as a form of negligence) with Montgomery Ward & Co. v. Brewer, 416 S.W.2d 837,
844 (Tex. Civ. App.-Waco 1967, writ ref'd n.r.e) (submission with instruction defining the level of intentional
conduct required).