

# NUMBER 13-08-00209-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **MATEO GARCIA, III,** | **Appellant,** |
| **v.** | |
| **NUECES COUNTY EMPLOYEES CREDIT UNION,** | **Appellee.** |

### On appeal from the 214th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Vela
### Memorandum Opinion by Justice Garza

This case involves numerous causes of action pertaining to the collection of consumer debt owed on various vehicles by appellant, Mateo Garcia III. Garcia appeals the trial court's order granting a no-evidence motion for summary judgment filed by appellee, Nueces County Employees Credit Union ("NCECU"). By one issue, Garcia contends that he raised a genuine issue of material fact, thereby precluding summary

judgment, as to his claims for: (1) malicious prosecution; (2) violations of the Texas Debt Collection Act ("TDCA"), *see* TEX. FIN. CODE ANN. § 392.301(a) (Vernon 2006); and (3) unreasonable debt collection. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying dispute arose out of the actions of NCECU in collecting consumer debt on various automobile loans obtained by Garcia. NCECU began extending credit to and executing loan agreements with Garcia in the spring of 1999. In particular, one of the loans obtained was for a 1995 Pontiac Firebird. The loan agreement for the Firebird was executed on December 1, 1999; Garcia made his first payment via payroll deduction on February 4, 2000. The loan agreement provided that Garcia's minimum monthly payment was to be at least $146.00 and that the total monthly payment on all of his loans was $474.00.[1]

On or about February 9, 2001, and prior to his last payment made by payroll deduction, Garcia sold the Firebird to Josephine Luna without receiving permission from NCECU. Luna agreed to pay Garcia $370.00 per month for the vehicle. Luna continually made payments to Garcia until the Firebird was repossessed by NCECU on January 28, 2002. NCECU alleged that Garcia made his last payment on the loan for the Firebird on October 12, 2001, even though $7,175.12 was still owed on the vehicle. NCECU notified Garcia of the delinquency and demanded that he bring current the payments on the Firebird. Garcia ignored NCECU's notices, and NCECU, in turn, repossessed the vehicle.

Displeased with the repossession of the Firebird, Luna, on February 5, 2002,

---

[1] In addition to the Firebird, the record reflects that Garcia also took out loans from NCECU for a 1998 Ford Crown Victoria, a 1989 Nissan Maxima, and a pickup.

2

notified Garcia that she intended to pursue a claim against him for numerous violations of the Texas Deceptive Trade Practices Act. On April 9, 2002, Luna executed a "WITNESS STATEMENT" noting the circumstances surrounding her purchase of the Firebird and stating that she would not have purchased the Firebird had she been made aware that NCECU had a first priority lien on the vehicle.

As a result of his dealings with Luna, Garcia was indicted for one count of hindering secured creditors, *see* TEX. PENAL CODE ANN. § 32.33 (Vernon 2003), and one count of felony theft, *see id.* § 31.03 (Vernon Supp. 2008).[2] The State dismissed the indictment against Garcia on May 3, 2004, because it was "unable to locate key witnesses."

On August 26, 2005, Garcia filed his original petition asserting claims against NCECU for wrongful debt collection, unreasonable debt collection, malicious prosecution, extortion, intentional infliction of emotional distress, wrongful repossession, libel, slander, negligence, assault, wrongful arrest, and for violations of the finance code and the deceptive trade practices act. However, after granting Garcia an extension on March 29, 2006, the trial court dismissed Garcia's case for want of prosecution on May 2, 2006.

On November 15, 2006, Garcia re-filed his petition against NCECU, asserting the same claims made in the August 26, 2005 petition. On December 18, 2006, the trial court sustained NCECU's special exceptions to Garcia's November 15, 2006 petition. In its special exceptions, NCECU alleged that Garcia failed to supply sufficient facts to support the claims contained in his petition.

---

[2] On appeal, Garcia alleges that he "violated no known law," and that he resigned from his job as a bailiff because he was humiliated by the charges brought against him and he desired to prevent "embarrassment to his judge." Garcia further alleges that he was threatened with prosecution if he did not pay $13,500 to NCECU for the remaining balance on the Firebird. Garcia executed an affidavit stating that the $13,500 allegedly owed had "no basis in any fact to [his] knowledge."

In response to the trial court's ruling on NCECU's special exceptions, Garcia filed a "Supplemental Petition" on December 29, 2006. Garcia apparently intended for the "Supplemental Petition" to be an amended petition.[3] In this filing, Garcia asserted claims for: (1) violations of the TDCA under section 392.301 of the finance code, *see* TEX. FIN. CODE ANN. § 392.201(a); (2) unreasonable debt collection; (3) malicious prosecution; and (4) intentional infliction of emotional distress.[4]

On February 26, 2007, NCECU filed a traditional motion for summary judgment, asserting that Garcia's claims were time-barred. Garcia filed a response to NCECU's motion for summary judgment, contending that he was of unsound mind as a result of NCECU's actions, thus necessitating the tolling of the limitations period.[5] On March 28, 2007, the trial court denied NCECU's traditional motion for summary judgment.

Subsequently, NCECU filed a no-evidence motion for summary judgment, noting that an adequate time for discovery had passed and that Garcia had failed to provide competent summary judgment evidence as to the elements of the claims asserted in his

[3] With respect to his "Supplemental Petition," Garcia noted the following:

Mateo Garcia respectfully files this Supplemental Petition. Opposing Counsel pointed out that his previous petition had the wrong cause number and suggested that it was misnamed. It was agreed that the cause number was incorrect and the name could be changed. However, there was no intention to eliminate assertion of the doctrine of tolling due to unsound mind. . . . Plaintiff asserts the doctrine of tolling due to unsound mind.

In addition, the record contains a rule 11 agreement between the parties indicating that Garcia's "Supplemental Petition" was misnamed and that it was intended to be an amended petition. *See* TEX. R. CIV. P. 11.

[4] Because the trial court sustained NCECU's special exceptions to Garcia's November 15, 2006 petition and because Garcia did not re-assert many of the claims contained in his November 15, 2006 petition, we conclude that those claims not included in Garcia's December 29, 2006 "Supplemental Petition" were abandoned.

[5] Attached to Garcia's response to NCECU's motion for summary judgment were affidavits executed by himself and psychologist Barbara Beckham M.D., detailing his unsound mental state.

4

December 29, 2006 petition. On November 13, 2007, Garcia filed a response to NCECU's no-evidence motion for summary judgment and attached various exhibits, including several loan agreements he had with NCECU, and affidavits that he executed.

NCECU filed both objections to and a motion to strike Garcia's summary judgment evidence, asserting that: (1) the affidavits Garcia relied upon were conclusory and that he attempted to offer expert testimony when he was not an expert; (2) there was no evidence supporting the statements made in the affidavits; (3) the affidavits were not the best evidence of the alleged causes of action; and (4) the affidavits contained improper legal conclusions.[6] The record does not contain a ruling on NCECU's objections to and motion to strike Garcia's summary judgment evidence.

The trial court heard arguments on NCECU's no-evidence motion for summary judgment on January 24, 2008. On that same day, the trial court granted NCECU's no-evidence motion for summary judgment as to all of Garcia's claims. On February 21, 2008, Garcia filed a motion for new trial and a motion for sanctions. Garcia alleged that counsel for NCECU repeatedly lied to the trial court, filed frivolous pleadings, and made frivolous arguments. On March 19, 2008, the trial court conducted a hearing on Garcia's motion for new trial and motion for sanctions; on the same day, the trial court denied Garcia's motion for new trial and his motion for sanctions. This appeal ensued.

## II. STANDARD OF REVIEW

A party may move for summary judgment under rule 166a(i) on the ground that there is no evidence of one or more essential elements of a claim or defense on which an

---

[6] NCECU's objections to and motion to strike Garcia's summary judgment evidence was directed at both Garcia's November 13, 2007 affidavit and his affidavit executed in response to NCECU's traditional motion for summary judgment.

5

adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Duvall v. Tex. Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.–Austin 2002, no pet.). Unless the non-movant produces summary judgment evidence raising a genuine issue of material fact on the challenged elements, the court must grant the motion. TEX. R. CIV. P. 166a(i); *Urena*, 162 S.W.3d at 548; *Duvall*, 82 S.W.3d at 477-78.

In reviewing a no-evidence claim, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If more than a scintilla of evidence exists, it is legally sufficient. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). Evidence is more than a scintilla when it rises to the level that would enable reasonable and fair-minded people to differ in their conclusions. *Duvall*, 82 S.W.3d at 478. But when evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Duvall*, 82 S.W.3d at 478. A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex. App.–Houston [14th Dist.] 1999, no pet.).

### III. ANALYSIS

In his sole issue on appeal, Garcia contends that he produced sufficient evidence to raise a genuine issue of material fact as to each element of his claims for violations of

6

the TDCA, unreasonable debt collection, and malicious prosecution.[7] NCECU counters by arguing that Garcia failed to raise an genuine fact issue regarding his claims and that he failed to proffer competent summary judgment evidence.[8]

## A.    Malicious Prosecution

Garcia argues that NCECU sought out the Nueces County District Attorney's Office to harass him into making a payment of $13,500[9]—which he disputes was not owed—on his consumer debt by threatening criminal prosecution.  Conversely, NCECU asserts that Garcia violated sections 31.03 and 32.33 of the penal code when he sold the Firebird to Luna; therefore, the indictment against Garcia was not used for the purpose of harassing or threatening Garcia into making a payment on his consumer debt.  *See* TEX. PENAL CODE ANN. §§ 31.03, 32.33.

### 1.    Applicable Law

There are seven elements of a malicious prosecution claim in Texas:  (1) the commencement of a criminal prosecution against the plaintiff; (2) the initiation or procurement of the prosecution by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the lack of probable cause for the

---

[7] On appeal, Garcia does not address the intentional infliction of emotional distress claim that he raised in the trial court.  *See* TEX. R. APP. P. 38.1(e).

[8] NCECU urges this Court to strike Garcia's appellate brief because Garcia failed to include appropriate citations to authority to support his contentions.  *See* TEX. R. APP. P. 38.1(h).  Though Garcia's appellate brief could have been better drafted, he has included citations to the record and appropriate authority for the majority of his contentions.  Accordingly, we DENY NCECU's motion to strike.

[9] The record does not appear to support Garcia's allegation that he was ordered to pay $13,500. Garcia has not directed us to any evidence supporting his affidavit testimony that NCECU directed him to pay $13,500.

proceedings; (6) malice in filing the charge;[10] and (7) damage suffered by the plaintiff. *See*

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997); *see also Coniglio v.*

*Snyder*, 756 S.W.2d 743, 744 (Tex. App.–Corpus Christi 1988, writ denied).

**2. Discussion**

In an affidavit filed in response to NCECU's no-evidence motion for summary

judgment, Garcia noted the following:

> Olga P[o]mpa [a manager at NCECU] threatened to accuse me of a crime if I did not pay amounts not owed. The Credit Union's own records show the amounts were not owed. She demanded $13,500 or else I would be prosecuted (Craig Hill did also on her behalf). I told her I didn't owe so much. She said I had to pay the entire amount or else be prosecuted for a crime. . . . The Credit Union's own documentation shows I owed at most a few hundred dollars at the time I resigned my job but she insisted that I pay $13,500—a number with no basis in any fact to my knowledge.
>
> . . . .
>
> The Credit Union is identified as the "victim" on the Offense Report. The Offense Reports [sic] states that the Credit Union brought this case to the District Attorney. A note exists from Ogla [sic] P[o]mpa to Craig Hill. Several "To Whom It May Concern Letters" also exist. One of these letters has the business card of a police officer attached. The Offense Report states that the Credit Union provided documents to the District Attorney and obviously statements are made in the Offense Report that could have originated nowhere other than from the Credit Union (e.g. payment history).

In addition, Garcia attached to his response, among other things, a copy of the loan

agreement for the Firebird. The loan agreement provided:

> SECURITY INTEREST: In return for receiving the benefits of your open-end loan advance or other consideration, and by signing on the previous page or by endorsing a check you receive for your loan, you grant the Credit Union a security interest in the property described as collateral on the previous page. This security interest covers not only that property but all

---

[10] "Malice is generally defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others." *Thrift v. Hubbard*, 974 S.W.2d 70, 80 (Tex. App.–San Antonio 1998, pet. denied). Malice may be established by either direct or circumstantial evidence and may be inferred from lack of probable cause. *Id.*

proceeds, substitutions, or replacements, accessions, improvements, all proceeds from insurance, and all refunds of unearned premiums. . . .

OWNERSHIP OF COLLATERAL:  You promise that you will use the proceeds of the open-end loan advance to buy the collateral or that you own the collateral.  You promise that no one else has any interest in or claim against the collateral other than those you have already disclosed to the credit union.  You agree not to sell, lease, or give it as collateral to anyone else until you have repaid what you own the Credit Union or the Credit Union gives its written permission.

Garcia also attached a copy of the offense report compiled by the Nueces County District Attorney's Office.  The report stated that Garcia improperly sold the Firebird to Luna, and that at the time the Firebird was repossessed, Garcia owed a balance of $7,175.12 plus a $250.00 charge for the repossession.  The report further stated that:  (1) Garcia failed to give the proceeds of the sale of the Firebird to NCECU; (2) that Garcia failed to return the vehicle to NCECU; (3) Luna lost her money and vehicle as a result of Garcia's actions and NCECU's repossession of the Firebird; and (4) this information was obtained from NCECU.  As a result of Garcia's actions, the Nueces County District Attorney's Office filed charges for hindering a secured creditor (in violation of section 32.33 of the penal code) and felony theft[11] (in violation of section 31.03 of the penal code).  *See* TEX. PENAL CODE ANN. §§ 31.03, 32.33.

Garcia also provided a copy of a statement he received from NCECU chronicling his payment history from January 1, 2002 to April 30, 2002.  At this time, Garcia owed a balance of $7,175.12 on the Firebird.  The statement did not include the repossession fee,

---

[11] Section 31.03 of the Texas Penal Code states, in relevant part, that:  "A person commits an offense [of theft] if he unlawfully appropriates property with intent to deprive the owner of property."  TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2008).  However, in addressing Garcia's malicious prosecution claim, we need only address the applicability of section 32.33 of the penal code.  *See* TEX. R. APP. P. 47.1.

9

and it addressed Garcia's other loans with NCECU which are not the focus of this issue.[12]

Garcia's summary judgment evidence appears to establish several of the elements required to advance a claim for malicious prosecution. It is clear from the record that: (1) criminal charges were brought against Garcia; (2) NCECU provided information to the Nueces County District Attorney's Office which resulted in the commencement of the prosecution against Garcia; and (3) the charges were dismissed in Garcia's favor. *See Richey*, 952 S.W.2d at 517. However, Garcia failed to offer evidence raising an issue of material fact as to the lack of probable cause for the proceedings or malice. *See id.*

Section 32.33 of the penal code provides, in relevant part, that: "A person who has signed a security agreement creating a security interest in property or a mortgage or deed of trust creating a lien on property commits an offense if, with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property." TEX. PENAL CODE ANN. § 32.33(b). Section 32.33 further provides that:

> *A person who is a debtor under a security agreement, and who does not have a right to sell or dispose of the secured property or is required to account to the secured party for the proceeds of a permitted sale or disposition, commits an offense if the person sells or otherwise disposes of the secured property, or does not account to the secured party for the proceeds of a sale or other disposition as required, with intent to appropriate (as defined in Chapter 31) the proceeds or value of the secured property. A person is presumed to have intended to appropriate proceeds if the person does not deliver the proceeds to the secured party or account to the secured party for the proceeds before the 11th day after the day that the secured party makes a lawful demand for the proceeds or account. . . .*

*Id.* § 32.33(e) (emphasis added).

---

[12] NCECU statement provided that Garcia had an outstanding balance of $1,748.51 on the Maxima and a balance of $4,680.52 on the Crown Victoria. The pickup did not have an outstanding balance. The statement further provided that the Maxima was sold for $1,400.00, and the Crown Victoria was sold for $5,000.00.

Garcia sold the Firebird to Luna even though the loan agreement prohibited him from doing so; Garcia never accounted to NCECU for the proceeds from the sale of the Firebird. Therefore, Garcia's sale of the Firebird appears support a charge for a violation of section 32.33(e) of the penal code. *See id.* Furthermore, the charges against Garcia were dropped because the State had difficulty in locating witnesses. Garcia was not acquitted of the charges; in fact, no findings were made with regard to Garcia's guilt or innocence. However, the record supports a finding that the charges against Garcia were neither false nor frivolous. Moreover, Garcia's summary judgment evidence does not raise a material fact question as to whether NCECU possessed an "ill will, evil motive, gross indifference, or reckless disregard of the rights of others" in contacting the Nueces County District Attorney's Office about Garcia's alleged criminal violations. *See Thrift v. Hubbard*, 974 S.W.2d 70, 80 (Tex. App.–San Antonio 1998, pet. denied). Accordingly, we conclude that Garcia failed to raise a genuine issue of material fact as to several elements of his malicious prosecution claim; therefore, NCECU was entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(i); *Urena*, 162 S.W.3d at 548; *Duvall*, 82 S.W.3d at 477.

## B.    Violations of the TDCA

With respect to his TDCA claim, Garcia contends that NCECU threatened him with criminal charges in order to collect on consumer debt he owed, which violated the TDCA. *See* TEX. FIN. CODE ANN. § 392.301(a). Garcia further contends that the criminal charges brought against him were false and brought for the sole purpose of extortion. As a result of NCECU actions, Garcia argues that he suffered extreme mental anguish and financial loss. NCECU asserts that Garcia failed to produce competent summary judgment evidence establishing that he was falsely accused of a crime or was threatened with false

11

accusations of a crime in an attempt to collect on consumer debt he owed.

### 1. Applicable Law

The TDCA provides remedies for wrongful debt collection practices arising out of a debtor-creditor relationship. *See Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 135 (Tex. App.–Corpus Christi 2001, no pet.); *see also Peters v. Quinney*, No. 03-01-00043-CV, 2001 Tex. App. LEXIS 8395, at *11 (Tex. App.–Austin Dec. 20, 2001, no pet.) (mem. op.). Section 392.301 of the finance code provides, in relevant part, that:

> (a) In debt collection, a debt collector[13] may not use threats, coercion, or attempts to coerce that employ any of the following practices:
>
> . . . .
>
> (2) accusing falsely or threatening to accuse falsely a person of fraud or any other crime;
>
> (3) representing or threatening to represent to any person other than the consumer that a consumer is wilfully refusing to pay a nondisputed consumer debt when the debt is in dispute and the consumer has notified in writing the debt collector of the dispute;
>
> . . . .
>
> (5) threatening that the debtor will be arrested for nonpayment of a consumer debt without proper court proceedings;
>
> (6) threatening to file a charge, complaint, or criminal action against a debtor when the debtor has not violated a criminal law;
>
> . . . .
>
> (8) threatening to take an action prohibited by law.

TEX. FIN. CODE ANN. § 392.301(a). Subsection (b) provides that a debt collector is not

---

[13] Section 392.001 of the finance code provides that a "debt collector" is a "person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." TEX. FIN. CODE ANN. § 392.001(6) (Vernon 2006). Neither party disputes NCECU's characterization as a debt collector.

prevented from:

> (1) informing a debtor that the debtor may be arrested after proper court proceedings if the debtor has violated a criminal law of this state;
>
> (2) threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt; or
>
> (3) exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.

*Id.* § 392.301(b).

### 2. Discussion

Garcia asserts that he was a consumer, noting that the loan obtained from NCECU was "primarily for personal, family, or household use." Garcia further asserts that NCECU violated the TDCA when it allegedly threatened him with criminal charges if he did not pay off his debts.

The TDCA defines a "consumer" as "an individual who has a consumer debt." *Id.* § 392.001(1) (Vernon 2006). Consumer debt is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* § 392.001(2). Garcia directs us to the loan agreements which he executed with NCECU. The "ADDITIONAL PROVISIONS" section of the loan agreements provided that: "It is your intention to use this open-end credit plan primarily for personal, family, or household use." Garcia also relies on his own affidavit testimony, whereby he stated that the loan from NCECU was for his own benefit and that the vehicles purchased with the loan were for his "personal purposes." The record supports Garcia's contention that he was a consumer and that the collateral covered by the loan agreement was for personal use under the TDCA. *See id.* § 391.001(1)-(2).

13

In support of his contention that NCECU violated the TDCA, Garcia points to his affidavits and the offense report generated by the Nueces County District Attorney's Office. Garcia alleges that this summary judgment evidence demonstrated that NCECU "brought the case to the District Attorney's Office" and that NCECU repeatedly threatened him with criminal charges if he did not pay off the remaining balances on the loan agreements he had with NCECU. Specifically, Garcia, in one of his affidavits, noted that "[t]here was no crime. Mateo paid for these loans with payroll deduction. . . . He was substantially current. Further, Appellee was responsible for and had control of Mateo's payroll deductions. Appellee never complained about any small delinquency until it started persecuting Mateo." (Record citations omitted.) Garcia further noted that: (1) several people tried to make payments on the loans on his behalf, but NCECU refused to accept the payments; and (2) the alleged $13,500 owed was not supported by any of NCECU's records.

Despite his contentions, Garcia's summary judgment evidence does not raise a question of material fact as to whether NCECU violated the TDCA. Garcia has not pointed to any evidence in the record demonstrating that: (1) NCECU threatened him with a false criminal complaint or that NCECU caused him to be falsely accused of a crime; (2) NCECU threatened Garcia with arrest for nonpayment of his debts without proper court proceedings; or (3) NCECU took an action prohibited by law.[14] *See* TEX. R. APP. P. 38.1(h).

---

[14] In arguing that section 392.301(a)(3) applies to this matter, Garcia states the following:

> **Number 2(b).** The statute prohibits representing that a debtor is refusing to pay an undisputed debt when he is not. . . . Mateo was paying as evidenced by the Credit Union's own documents. Appellee even refused payments that were tendered. Further, Appellee actually owed Mateo not vice versa . . . . Nevertheless, the Credit Union represented that Mateo was not paying on the debt for over a year—there is no specific objection to the hearsay nature of this statement so this objection is waived.

(Emphasis in original.) At no point on appeal has Garcia cited evidence in the record that *NCECU represented to another person* that he refused to pay his disputed consumer debt after he had notified NCECU

We conclude that Garcia has failed to bring forth more than a scintilla of probative evidence raising a genuine issue of material fact as to his claim that NCECU violated the TDCA; therefore, NCECU was entitled to judgment as a matter of law on Garcia's TDCA claims. *See* TEX. R. CIV. P. 166a(i); *Urena*, 162 S.W.3d at 548; *Duvall*, 82 S.W.3d at 477-78.

## C. Unreasonable Debt Collection

With respect to his claim for unreasonable debt collection, Garcia argues, in one paragraph, that "threatening a law enforcement officer with prosecution for a nonexistent crime and attempting to groundlessly extort money from him when he owes no money is an unreasonable way to collect a debt" and that "a jury could infer that the described conduct was willful, wanton, malicious, and for purposes of harassment." NCECU asserts that Garcia did not produce competent summary judgment evidence creating a fact issue on this claim.

### 1. Applicable Law

Unreasonable debt collection is an intentional tort. *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.–Dallas 2008, no pet.). The elements are not clearly defined and the conduct deemed to constitute an unreasonable[15] debt collection effort varies from case to case. *Id.* "The method of submission of the issue to a jury is as varied

---

that he was disputing the debt. *See id.* § 392.301(a)(3) (Vernon 2006); *see also* TEX. R. APP. P. 38.1(h). As such, we consider this sub-issue to be inadequately briefed. *See* TEX. R. APP. P. 38.1(h).

[15] "The common, everyday meaning of 'unreasonable' is 'exceeding the bounds of reason or moderation.'" *EMC Mortgage v. Jones*, 252 S.W.3d 857, 869 (Tex. App.–Dallas 2008, no pet.) (quoting WEBSTER'S INT'L DICTIONARY 2507 (3rd ed. 1981)).

as the conduct giving rise to the tort."[16]  *Id.*  Essentially, conduct giving rise to the tort includes "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."  *See Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ. App.–Waco 1967, writ ref'd n.r.e.); *Connell v. Rosales*, 419 S.W.2d 673, 676 (Tex. Civ. App.–Texarkana 1967, no writ).

## 2. Discussion

In asserting that NCECU engaged in unreasonable debt collection, Garcia appears to rely heavily on his arguments pertaining to the issue of TDCA violations.  Garcia has not cited any evidence demonstrating that NCECU's conduct was willful, wanton, or malicious in attempting to collect on his debt.  *See* TEX. R. APP. P. 38.1(h).  Garcia's bald allegations that NCECU engaged in unreasonable debt collection does not create more than a scintilla of probative evidence raising a genuine issue of material fact.  *See Ford Motor Co.*, 135 S.W.3d at 600 (holding that less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact).  Furthermore, we have already rejected Garcia's assertions that he raised a material fact issue as to NCECU's alleged TDCA violations.  We therefore conclude that NCECU was entitled to judgment as a matter of law on Garcia's unreasonable debt collection claims.

## IV. CONCLUSION

Having concluded that Garcia failed to raise a genuine issue of material fact as to the essential elements his claims for malicious prosecution, violations of the TDCA, and unreasonable debt collection, we overrule his sole issue on appeal.  Accordingly, we affirm

---

[16] *Compare Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 81 n.3 (Tex. App.–El Paso 1988, writ denied) (submission as a form of negligence) *with Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ. App.–Waco 1967, writ ref'd n.r.e) (submission with instruction defining the level of intentional conduct required).

16

the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 20th day of November, 2008.