# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00363-CV

**Ben Melton, Appellant**

**v.**

**CU Members Mortgage, a Division of Colonial Savings F. A.; and
First Western Title Co., Appellees**

### FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY
### NO. C130102C, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## O P I N I O N

In this dispute concerning the constitutionality of a loan on real property, Appellant Ben Melton challenges the district court's grant of summary judgment in favor of Appellees. We will affirm the judgment in part and reverse and remand in part for a determination of attorney's fees.

## BACKGROUND

In 1997, Melton purchased a leasehold estate interest from the City of San Angelo for a property on Lake Nasworthy. The leasehold is Melton's homestead. Melton makes annual payments under the terms of the lease, which ends in September 2036. On March 13, 2009, Melton refinanced an existing note on the property by taking out a home equity loan from

Colonial.[1] To effectuate the loan, Melton signed a Texas Home Equity Note (Note) and a Texas Home Equity Security Instrument (collectively, the loan documents) securing a $223,648 lien on the leasehold. The loan was settled and funded at title company First Western's office. Melton stopped paying on the Note in February 2013. On March 13, 2013, the fourth anniversary of the day he signed the loan documents, Melton sued Appellees as well as the appraiser involved in the loan's origination, asserting several causes of action and seeking a declaratory judgment that the loan was not eligible for foreclosure based on several provisions of Article XVI, section 50, of the Texas Constitution.

Appellees moved for summary judgment on the ground that the statute of limitations barred Melton's claims, which Appellees asserted accrued on the date the loan closed. Although Melton filed his suit on the fourth anniversary of the loan's closing, he did not serve Appellees with the suit until two months later, May 13, 2013. The district court granted summary judgment in favor of Appellees in 2014, ordering that Melton take nothing on his claims. The district court ruled that Melton defaulted on his payment obligations, that the loan could be foreclosed through sale of the property, and that Colonial could recover attorney's fees and costs from Melton. In 2015, the district court granted summary judgment in favor of the appraiser. The district court found Melton's claims against the appraiser frivolous and awarded sanctions against Melton and Melton's attorney. Melton did not challenge the portions of the judgment relating to the appraiser, although his then-attorney appealed the sanctions against him. *See Mosser v. Mims*, No. 03-15-00365-CV, 2017 Tex. App. LEXIS 3988, at *1 (Tex. App.—Austin May 3, 2017, no pet.) (mem. op.). After these rulings were merged into a final judgment, Melton

---

[1] The loan was later assigned to the Federal Home Loan Mortgage Corporation, but Colonial continues to service the loan.

appealed, arguing that his claims against Appellees alleging constitutional defects in the loan were not subject to any limitations defense.

While Melton's appeal was pending, the Texas Supreme Court issued *Wood v. HSBC Bank USA, N.A.*, holding that "liens securing constitutionally noncompliant home-equity loans are invalid until cured and thus not subject to any statute of limitations." 505 S.W.3d 542, 545 (Tex. 2016). In light of *Wood*, this Court reversed the judgment of the district court and remanded the case for further proceedings. *See Melton v. CU Members Mortg.*, No. 03-15-00339-CV, 2017 Tex. App. LEXIS 1441 (Tex. App.—Austin Feb. 22, 2017, no pet.) (mem. op.). On remand, Appellees again moved for summary judgment, which the district court granted, entering an order disposing of all claims except for the amount of attorney's fees to be awarded to Appellees. Later the district court granted summary judgment to Appellees as to their attorney's fees. On Appellees' motion, the district court entered an amended order combining its two earlier orders into a single final order. Melton appeals.

## STANDARD OF REVIEW

Appellees moved for summary judgment on both no-evidence and traditional grounds. A no-evidence summary-judgment motion must assert that the nonmovant has produced no evidence of one or more essential elements of its claim. *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.—Austin 2002, no pet.); *see* Tex. R. Civ. P. 166a(i). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to produce summary-judgment evidence raising a genuine issue of material fact on the challenged elements. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. denied) (citing Tex. R. Civ. P. 166a(i)). To raise a genuine issue

3

of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). If the nonmovant fails to produce more than a scintilla of evidence of the challenged fact, the motion must be granted. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

To prevail on a motion for traditional summary judgment, a party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *KMS Retail Rowlett, LP v. City of Rowlett*, No. 17-0850, 2019 Tex. Lexis 463, at *9 (Tex. May 17, 2019). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A defendant who moves for summary judgment must disprove at least one essential element of the plaintiff's causes of action. *Duvall*, 82 S.W.3d at 477.

If the trial court does not state the basis on which it granted summary judgment, we must affirm if any of the movants' theories has merit. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004). Because the propriety of a summary

judgment is a question of law, we review the trial court's decision de novo. *Valence Operating Co.*, 164 S.W.3d at 661.

## DISCUSSION

Melton argues the district court erred in granting summary judgment for a multitude of reasons that are organized into four overarching issues: (1) the district court abused its discretion in sustaining objections to two pieces of summary-judgment evidence, (2) the district court erred in ruling that Melton take nothing on his claims against Appellees, (3) the district court erred in granting Appellees' motion for summary judgment, and (4) the district court erred in awarding attorney's fees to Appellees.

### Summary-Judgment Evidence

In his first issue, Melton complains that the district court abused its discretion in sustaining two of Appellees' objections to summary-judgment evidence. Appellees had objected that (1) Melton's declaration was a sham affidavit, (2) Melton's designation of an expert was untimely, and (3) Melton is contractually estopped from challenging the appraisal. The district court agreed and excluded Melton's and the proposed expert's declarations from the evidence at summary judgment.

#### *Sham affidavit*

"Although we generally review summary judgments de novo, a trial court's refusal to consider evidence under the sham affidavit rule should be reversed only if it was an abuse of discretion." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). Under Rule 166a(c), a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn

testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict. *Id.* at 87.

Melton opined in his declaration that the appraisal of his property was too high and that he did not receive signed copies of certain documents at his closing. Among the items Melton signed at closing, however, was an "Acknowledgment Regarding Fair Market Value of Homestead Property" (Acknowledgment of Value) affirming, consistent with the appraisal, that the fair market value of the homestead was $300,000. He also signed a "Texas Home Equity Receipt of Copies," in which he acknowledged receipt of copies of "all documents signed by the owner related to the loan," including the Acknowledgment of Value. Several of the documents Melton signed at closing, including the Acknowledgment of Value and the loan documents, cite Article XVI, section 50, of the Texas Constitution. Melton does not contest that these documents are sworn testimony.

In contravention of the documents Melton signed at closing, Melton's declaration indicated that the appraiser failed to account for repairs needed on the property in making his appraisal. The declaration does not contain any explanation for the new assertion that the appraisal was too high because the appraiser did not include "damage to the home and repairs to correct the damage" in the appraisal. Melton argues that the declaration serves to "clarify" the issue and that the property's "true value was later revealed," but, aside from his declaration, he does not cite any evidence in the voluminous appellate record that suggests that the appraiser failed to consider damage to the home or otherwise erred in his analysis. Melton urges that because the declaration "reflects what Appellant believed to be true during that time," "the trial court abused its discretion" in excluding it as a sham.

In reviewing Melton's declaration, the documents it contradicts, and the pleadings, it is evident that Melton's assertion regarding the appraisal is material to his claim that the loan exceeds the constitutional limit for a foreclosure eligible loan. *See* Tex. Const. art. XVI, § 50(a)(6)(B) (limiting the amount of foreclosure eligible debt on a homestead to 80 percent of the fair market value of the homestead on the date the extension of credit is made). Although Melton's declaration may reflect his changing beliefs, the fact that it does so without offering an explanation renders it susceptible to the district court's conclusion that it is a sham affidavit executed to create a fact issue regarding the property's value. *See Lujan*, 555 S.W.3d at 88 (stating that the trial court does not abuse its discretion by concluding no genuine issue of fact exists when an affidavit is executed after a deposition and there is a clear contradiction on a material point without explanation, and noting that the rule's application requires a case-specific inquiry). On this record, we conclude that the district court did not abuse its discretion in excluding Melton's declaration.

### *Expert declaration*

Melton included in his response to Appellees' summary-judgment motion a declaration from Philip McCormick, an appraiser. Appellees objected to the use of the declaration on summary judgment, asserting that they did not have an opportunity to depose McCormick before moving for summary judgment, that McCormick's declaration did not contain an expert opinion of the property's value, and that Melton was contractually estopped from challenging the appraisal.

In response to Appellees' objection, the district court excluded McCormick's declaration for purposes of summary judgment. We review rulings on the admission or exclusion

7

of evidence for abuse of discretion. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr.*, *P.C.*, 284 S.W.3d 416, 442 (Tex. App.—Austin 2009, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). We agree that Melton is contractually estopped from challenging the appraisal. Estoppel by contract is a form of quasi-estoppel based on the idea that a party to a contract cannot, to the prejudice of another, take a position inconsistent with a contract's provisions. *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 387 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *accord Johnson v. Structured Asset Servs.*, 148 S.W.3d 711, 721-22 (Tex. App.—Dallas 2004, no pet.); *see also Albright v. Rhea & Sons Enters.*, No. 03-15-00496-CV, 2016 Tex. App. LEXIS 11296 at *5 (Tex. App.—Austin Oct. 19, 2016, no pet.) (mem. op.) (describing estoppel by contract). The rule of estoppel by contract is another way of saying that a party is bound by the terms of his or her contract. *Johnson*, 148 S.W.3d at 722; *see Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007) (applying Texas law to find that a party was estopped from taking a position contrary to a position taken in forbearance agreements). As part of his loan agreement, Melton signed the Acknowledgment of Value, affirming the property's $300,000 value. He further agreed, by signing a Texas Home Equity Affidavit and Agreement (Home Equity Affidavit), that the $223,648 loan did not exceed 80% of the fair market value of the property at the time the loan was made. Having confirmed the property's value by signing the loan agreement, Melton is now estopped from taking a contrary position. We conclude the district court did not abuse its discretion in excluding McCormick's affidavit and we therefore overrule Melton's first issue on appeal.

**The District Court's Ruling Against Melton and Grant of Appellees' Summary Judgment**

In his second and third issues, Melton complains in twenty-four sub-issues that the district court erred in granting a take-nothing judgment against Melton and granting summary judgment in favor of Appellees. Because these issues are intertwined and nearly all depend on whether the loan complied with the requirements of Article XVI, section 50, of the Texas Constitution, we address them together.

### *Alleged Constitutional Defects under Article XVI, section 50*

In Texas, both as a state and during its days as a republic, the homestead has been "protected from forced sale, not merely by statute as in most states, but by the Constitution." *Finance Comm'n v. Norwood*, 418 S.W.3d 566, 570 & n.8 (Tex. 2013) (citing Tex. Const. art. XVI, § 50 (1876); Tex. Const. art. XII, § 15 (1869); Tex. Const. art. VII, § 22 (1866); Tex. Const. art. VII, § 22 (1861); Tex. Const. art. VII, § 22 (1845)). Currently, "section 50 of the constitution protects the homestead from foreclosure for the payment of debts subject to eight exceptions, one of which covers only those home-equity loans that contain a litany of exacting terms and conditions set forth in the constitution." *Garofolo v. Ocwen Loan Servicing*, 497 S.W.3d 474 (Tex. 2016); *see* Tex. Const. art. XVI, § 50(a)(6)(A)-(Q); *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 354 (Tex. 2000). As a result, if Melton's loan failed to comply with section 50's provisions, the Texas Constitution would shield Melton's homestead from forced sale.

### *Loan Exceeding 80% of Fair Market Value*

Melton first complains that there is a genuine issue of material fact as to whether the loan exceeded 80% of the fair market value of the homestead on the date of closing.

9

Section 50(a)(6)(B) allows foreclosure on an extension of credit only if the loan "is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made." Tex. Const. art. XVI, § 50(a)(6)(B). Prior to closing, Melton received an appraisal listing the value of his leasehold as $300,000. For a property with a value of $300,000, the maximum allowable amount of debt for a foreclosure eligible home equity loan on a homestead would be $240,000; the $223,648 loan to Melton would comply. But Melton argues that the appraisal was wrong, and asserts that in providing his declaration and the declaration of McCormick, both of which were excluded from evidence in the district court, he created a fact issue as to the property's value, even though McCormick did not perform a comparative market analysis and even though Melton previously signed the Acknowledgment of Value acknowledging that "on the date the extension of credit is made, the fair market value of the Homestead Property is $300,000." *See id.* § 50(a)(6)(Q)(ix), (h) (lender may rely conclusively on an acknowledgment of fair market value if certain conditions are met). Citing the testimony of Colonial's corporate representative, Melton also argues that the loan failed to take into account an existing encumbrance of about $70,000. In her testimony, the representative explained that Melton had an existing $70,000 lien on the homestead that would be paid off as part of the refinancing process. In other words, the lender would pay off the $70,000 and the remaining outstanding debt against the homestead would be the $223,648 loan. Thus, the $70,000 did not count toward the constitution's 80% cap, and the loan complied with section 50(a)(6)(B).

### Personal Liability for a Home Equity Loan

Melton alleges that there is a genuine issue of material fact as to whether he was personally liable for the loan, in contravention of Article XVI, section 50(a)(6)(C). *See* Tex. Const. art. XVI § 50(a)(6)(C) (a loan is foreclosure eligible only if it is made "without recourse for personal liability against each owner. . . ."). Without citing legal authority, Melton alleges that Appellees' reporting his failure to repay the loan to credit agencies as "personal credit" provides evidence that he is personally liable for the loan. Generally, a nonrecourse note has the effect of making the note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note, rather than having the maker of the note personally guarantee repayment. *Patton v. Porterfield*, 411 S.W.3d 147, 157 (Tex. App.—Dallas 2013, pet. denied). Appellees have not wavered from the position that Melton's leasehold is the collateral securing the lien. Additionally, the provisions of the loan documents contemplate that the leasehold serves as collateral for the loan. Under the circumstances, we cannot agree that reporting delinquent payments to a credit agency is equivalent to averring that a person is exposed to personal liability.

### Unconstitutional Prepayment Penalty

Melton argues that there is a genuine issue of material fact as to whether the loan includes an unconstitutional penalty. To be foreclosure eligible, a loan must be "payable in advance without penalty or other charge." Tex. Const. art. XVI, § 50(a)(6)(G). Melton argues that the Note's language that the Note holder may apply a prepayment to the "accrued and unpaid interest on the Prepayment amount" constitutes a prepayment penalty. Melton acknowledges that paying "[a]ccrued interest would not be a penalty," but argues that "unpaid interest on the

11

prepayment amount (the principal) would be a penalty." Melton is correct that construing the Note to mean that a borrower would have to pay interest not yet accrued in making a prepayment might run afoul of the constitution's protection for paying off a loan in advance. Here, however, the Note refers to "accrued and unpaid interest"—interest that is already owed but not yet paid, as the amount to which a prepayment can be applied before applying the remainder to principal. As such, this is not an unconstitutional penalty.

### *Repayment of Unsecured Debts*

Melton contends that there is a genuine issue of material fact as to whether the loan complied with Article XVI, section 50(a)(6)(Q)(i). A foreclosure eligible loan may not require the owner of the homestead "to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to **another lender**." *Id.*, § 50(a)(6)(Q)(i) (emphasis added). Melton argues that Appellees required him to pay off third-party debt[2] and cites *Box v. First State Bank*, 340 B.R. 782, 786-88 (S.D. Tex. 2006), to support his position. *Box* concluded that a lender violated section 50(a)(6)(Q)(i) by requiring the borrowers to use

---

[2]  Melton also complains that this requirement, and the requirement that he sign an Acknowledgment of Value, should be unenforceable because the loan documents were all unconscionable contracts of adhesion. Whether a contract is unconscionable is a question of law for the court to decide. *Kendziorski v. Saunders*, 191 S.W.3d 395, 406 (Tex. App.—Austin 2006, no pet.). The basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). Melton alleges he had no ability to negotiate the terms of the loan, which the record shows he sought out, applied for, and closed on in order to refinance the existing lien on his homestead and to pay off consumer debt. However, Melton identifies no evidence indicating unconscionability. *See In re Oakwood Mobile Homes*, Inc., 987 S.W.2d 571, 574 (Tex. 1999) (per curiam) (orig. proceeding) ("adhesion contracts are not automatically unconscionable or void"). We conclude that requiring Melton to pay off third-party debt and sign an Acknowledgment of Value in compliance with the Texas Constitution is not unconscionable.

proceeds of a home equity loan to repay unsecured debt to that same lender. In this case, Melton argues he was required to repay debts to third-party lenders, and he identifies about $138,000 in credit card and car loan debt that he paid off with the loan. Melton's argument is unavailing because the loan was used to pay non-homestead debts to lenders other than Colonial. "Section 50(a)(6) allows a home-equity lender to require the borrower to use loan proceeds to pay: (1) debts secured by the homestead; and (2) non-homestead debts to third-party creditors." *Stringer*, 23 S.W.3d at 356.

### *Executed Copies of Documents Signed at Closing*

Melton argues that Appellees' summary judgment should be overturned because he produced evidence that, in violation of Article XVI, section 50(a)(6)(Q)(v), he did not receive copies of all required documents at closing. A foreclosure eligible loan must be "made on the condition that . . . at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit." Tex. Const. art. XVI, § 50(a)(6)(Q)(v). Although he received copies of the documents he signed at closing, he alleges he received copies without his or the lender's signatures and that this violated the constitution. Appellees argue that Melton signed documents reflecting that he received copies of the documents he signed at closing and they cite *Pelt v. U.S. Bank Trust National Association*, 359 F.3d 764, 768-69 (5th Cir. 2004), for the proposition that the constitution does not require copies of executed documents to be provided. We disagree. *Pelt* determined that the plain language of the constitution required the borrower to receive copies of the documents the borrower signed but did not require those copies to be executed by the parties. In other words, the *Pelt* court determined that copies with blank

signature lines sufficed to satisfy section 50(a)(6)(Q)(v). When *Pelt* was decided, however, section 50(a)(6)(Q)(v) required that "the lender, at the time the extension of credit is made, provide the owner of the homestead a copy of all documents signed by the owner related to the extension of credit." Tex. Const. art. XVI, § 50(a)(6)(Q)(v) (amended 2007). After *Pelt* issued, section 50(a)(6)(Q)(v) was amended to expressly require that the borrower receive copies of executed documents. The documents Melton signed at closing do not affirm that the copies he received were executed, and in any event, Appellees admit that at least the Acknowledgment of Value was not signed by Colonial on the date of closing. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(ix) (requiring both the lender and the owner of the homestead to "sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made"). Instead, both parties agree it was signed within four weeks of closing. Thus, Colonial did not initially comply with section 50(a)(6)(Q)(v). However, the constitution provides a series of cure provisions in anticipation of errors in closing these home equity loans. *Id.* § 50(a)(6)(Q)(x)-(xi). In the event of a failure to provide executed documents or a signed acknowledgment of fair market value:

> the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by . . .
>
>> (d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph.

*Id.* § 50(a)(6)(Q)(x)(d). Under section 50(a)(6)(Q)(x)(d), Appellees had 60 days to provide copies of the executed documents and to sign the Acknowledgment of Value once Melton notified them

14

of the constitutional defect. Melton does not identify any documents aside from the Assignment of Value that required a signature from Colonial but were not signed. The record shows that Melton received signed copies of the documents signed by him and it contains a copy of the Acknowledgment of Value signed both by Melton and a representative for Colonial, which the parties agree in their briefing was executed within four weeks of closing. Under the circumstances, the evidence conclusively shows that although Colonial initially failed to comply with the constitution's requirements, Colonial complied with the cure provisions found in section 50(a)(6)(Q)(x)(d) and thereby became compliant.

### Melton's Claims Against Appellees

Having determined that Appellees were entitled to judgment as a matter of law and that Melton did not raise a genuine issue of material fact on these constitutional issues, we also overrule Melton's claim that the district court erred in rendering a take-nothing judgment against him based on alleged failure to satisfy these constitutional requirements. Similarly, we overrule Melton's claims that (1) Appellees violated the Texas Debt Collection Act because their affirmative representation that the loan is foreclosure eligible is false; (2) the district court erred in holding that Colonial's lien and its right to foreclose are valid; (3) Colonial should be considered to have "unclean hands"; (4) Appellees committed fraud in misrepresenting that the loan did not have a prepayment penalty; and (5) Appellees committed fraud by misrepresenting the fair market value of the property and misrepresenting that the loan proceeds had to be applied to another debt not secured by the property because these claims are all based on the alleged constitutional violations that we overruled above. Because Melton has not prevailed on these

claims, we need not address Melton's claims seeking forfeiture, declaratory relief, and an accounting. We overrule Melton's second and third issues on appeal.

**Attorney's Fees**

In his fourth issue, Melton asserts that the district court lacked plenary power to award attorney's fees or to issue the amended final judgment. Melton asserts that the summary judgment granted on February 20, 2018, as to all issues except attorney's fees was the final judgment. To the contrary, the remaining issue of attorney's fees rendered the February 20, 2018 judgment interlocutory. *See McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (holding a judgment that did not dispose of attorney's fees was not an appealable judgment). "A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Although courts presume that a judgment following a trial on the merits is final, "there is no such presumption of finality following a summary judgment or default judgment." *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 (Tex. 2005) (orig. proceeding) (citing *Lehmann*, 39 S.W.3d at 199-200). "[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205. As a result, the district court's plenary power did not expire before it awarded attorney's fees and issued the amended final judgment.

Melton asserts in the alternative that if the district court had power to render judgment on attorney's fees and to issue an amended final judgment, we should nonetheless

reverse because Melton was entitled to a jury trial on the amount of the fees and because Appellees are "not entitled to any attorney's fees prior to February 22, 2017," when this Court remanded the case to the district court in light of *Wood*. In response to Appellees' motion for summary judgment on attorney's fees, the district court awarded $56,025.50 in attorney's fees to Appellees for defending against Melton's claims under the Uniform Declaratory Judgment Act and $10,180 to Colonial pursuant to the language of the Note allowing recovery of reasonable attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). An attorney's affidavit can sufficiently establish reasonable attorney's fees on motion for summary judgment. *American 10-Minute Oil Change, Inc. v. Metropolitan Nat'l Bank-Farmers Branch*, 783 S.W.2d 598, 602 (Tex. App.—Dallas 1989, no writ) (citing *Querner Truck Lines v. Alta Verde Indus.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ); *Bado Equip. Co. v. Ryder Truck Lines, Inc.*, 612 S.W.2d 81, 83 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *disapproved of on other grounds by McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337 (Tex. 1993)). The attorney for the nonmovant may file an affidavit contesting the reasonableness of the movant's attorney's affidavit in support of attorney's fees, thus creating a fact issue. *Id.* However, Melton did not do so here. Instead he presented the argument that the amount awarded for attorney's fees incurred before February 22, 2017, when this Court remanded the case to the district court, should not have been included in the fee award. It is undisputed that the amount of fees awarded by the district court included fees for preparing for the first appeal to this Court, where Appellees were not the prevailing party. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 590 (Tex. 1998) ("a party should not be penalized for taking a successful appeal"). Thus, there is a genuine issue of material fact as to whether the amount of

17

attorney's fees awarded is reasonable. We will therefore remand the issue of attorney's fees for a determination of the reasonable amount of attorney's fees. *See Hardman v. Dault*, 2 S.W.3d 378, 381-82 (Tex. App.—San Antonio 1999, no pet.) (remanding the case to the trial court for a jury trial on attorney's fees after the trial court granted a partial motion for summary judgment and held a bench trial on attorney's fees). We sustain Melton's fourth issue on appeal.

## CONCLUSION

We affirm the district court's judgment as to Melton's first three issues on appeal. Having sustained Melton's fourth issue, we reverse the district court's award of attorney's fees and remand the case for a new trial on attorney's fees.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed in Part; Reversed and Remanded in Part

Filed: July 31, 2019

18